GUASTELO *v.* MICHIGAN CENTRAL RAILROAD CO.

1. Master and Servant—Workmen's Compensation Law—Personal Injuries—Course of Employment.

Where claimant, who was engaged as a member of a repair crew by respondent railroad company, "hung around" about half an hour after quitting time, when he was free to go where he pleased, and after dark started to walk down the railroad track, which was a shorter way than the highway which nearly paralleled the track, to a bunk car, furnished by respondent, on a side track, near a village, where he ate and slept, and, after going some distance, was struck and injured by respondent's locomotive, he was not performing any duty in the line of his employment, in the course and out of which the injury arose, rendering respondent liable under the workmen's compensation law (Act No. 10, Extra Session 1912, 2 Comp. Laws 1915, § 5423 *et seq.*).[1]

2. Same—Workmen's Compensation Law—Going to and from Work.

It is recognized as a general rule that injuries sustained by an employee while going to or returning from his day's work, where there is no contract of transportation, are not to be regarded as arising out of or received in the course of his employment.

---

[1] On liability of master for injuries to servant arising out of and in the course of the employment, see note in L. R. A. 1916A, at page 232.

Certiorari to Industrial Accident Board. Submitted October 11, 1916. (Docket No. 126.) Decided December 22, 1916.

Antonio Guastelo presented his claim against the Michigan Central Railroad Company for compensation for injuries while in defendant's employ. From an award of compensation, defendant brings certiorari. Reversed.

*J. W. Dohany* (*Henry Russel* and *Frank E. Robson,* of counsel), for appellant.

*Louis J. Colombo,* for appellee.

STEERE, J. The question involved in this proceeding is whether an injury to plaintiff for which the State industrial accident board awarded him damages arose out of and in the course of his employment.

On December 13, 1913, said Antonio Guastelo was employed by defendant as one of a force of laborers engaged under a foreman in repairing and raising its railroad track at a place called Osborn Pit, located about five miles west of Ann Arbor and one mile east of the village of Delhi. He ate and slept in a bunk car on a side track near a crossing at Delhi. The usual quitting time for the crew at Osborn Pit was 5:30 in the evening. He was injured about a half hour after his day's work was done, while walking westerly along the railroad track towards Delhi, returning with a companion to his car for the night.

Plaintiff testified that he was then working at the steam shovel for $2 per day; that, when they quit that evening and the "boss" laid him off for the night at about 5:30 or 5:35, he put a little coal into the engine, changed from his working clothes, and "hung around" until about 6 o'clock, then started towards Delhi with a companion and had gone, as he states it at different

times, "about 200 paces west from where I was working, * * * about 600 feet from where I had been working, * * * about one-third of the way," when the accident befell him, which he narrates as follows:

"I was going around a curve, and it was quite dark, and the train came along going in the opposite direction to which I was going, and it struck me in the arm and hurt me."

He gives no further details or explanation of the accident, except to state that his arm was broken in two places so that he was seriously injured, disabled for work, and laid up in the hospital for some time. His companion testified that they had been walking perhaps two or three minutes, and "we were going around a curve, and it was misty, getting dark, and a train came along and hit him in the arm. It projected out and hit him on the arm."

No opinion was filed by the accident board, and we can only infer that, in harmony with the contention of appellee's counsel, liability was predicated upon the fact that defendant furnished him quarters in which to live, and allowed him to travel along its tracks in going to and from his work.

The evidence shows there were then from 30 to 35 men in this crew, most of whom lived in box cars equipped for their accommodation and located upon a siding right at Osborn Pit. It was customary for defendant to furnish such cars for the accommodation of its track construction and repair crews convenient to wherever work was being done. Abundant cars of that kind were furnished at the Osborn Pit, where there were 8 or 10 cars spotted on a siding, properly equipped with eight bunks in each, in which most of the single crew then working was located. A double crew had worked there for a while, but at this time one crew was taken off and only a single shift work-

ing. There was then but one bunk car at Delhi, which had remained there for some time. Guastelo was originally located in it and had bunked there with others for over two months. Four men then lived there, two working at Delhi, and Guastelo with his companion working at Osborn Pit. The men were generally allowed to select their cars and associates according to their preferences. Defendant did not board the men nor charge them for use of the cars, but permitted them to cook, eat, and sleep in them. They were at liberty to live elsewhere. The only requirement of their hiring was that they work during working hours. Their time and pay started when they started work and stopped when they quit at quitting time, after which they were masters of their own time and movements until work began the next morning.

Between Delhi and Osborn Pit a highway nearly paralleled the railroad track, but a short distance from it. The walking was better upon the highway than upon the track, and the foreman testified he usually traveled the highway when going and coming at night, both because it was better walking and safer. The railroad right of way was more accessible and the distance some shorter. It was commonly used by the men and Guastelo testified that he and the others always went that way.

It is undisputed that he was employed by the day, and when work stopped at quitting time that evening, about 5:30, his wages stopped, he was through for the day and had earned his day's pay, his employer had no demand upon or need of him, he owed it no duty, and was then master of his own time and movements until he should return at the appointed time the following morning to commence another day's work, when his pay would again start. His contract of employment did not provide. that he should receive pay

for time consumed in going to or returning from his place of employment, nor for transportation. At the conclusion of his day's work he could go when and as he chose. He did not choose to leave for nearly half an hour, nor until it was dark, or getting dark, on a misty evening, and he chose his customary, but a shorter and more dangerous, route along the railroad track, when he could have taken the less dangerous though less convenient highway which nearly paralleled it, and which his foreman testified to taking "if it was very dark." While applicant's manifest negligence does not preclude recovery if he was then performing a duty in the line of his employment, in the course and out of which the injury arose, these facts render inapplicable the invoked rule that employment of one working by the day does not instantly end at the time and place work ceases, but the protection of the law extends to a reasonable time and space for the employee to leave the locality or zone of his work and while he is in proximity, approaching or leaving his place of employment by the only means of access thereto. The general rule by which this class of cases should be tested is thus well stated in *Benson* v. *Railway Co.*, 6 W. C. C. 20, 23:

"A person who is in an employment carries with him during the period, whether in the day or night or whatever time it may be, that he is bound to work, all the privileges that are conferred by this act; but when he has left that employment in the evening, or at any other hour, from that time until he arrives next morning at the place where his field of employment is, he is in the same position as any other member of the public. He carries with him into his period of leisure no insurance from his employers. If he takes a dangerous course, he takes it at his own risk."

The distinction there pointed out plainly demarks the instant case from *Papinaw* v. *Railway Co.*, 189 Mich. 441 (155 N. W. 545); *Beaudry* v. *Watkins*, 191

Mich. 445 (158 N. W. 16) ; *Kunze* v. *Shade Tree Co.*, 192 Mich. 435 (158 N. W. 851), and other analogous cases cited to sustain the award. Without reviewing them at length, it is sufficient to note that in all those cases it was shown the workman when injured was on duty in the line of his employment, either actively at work or held under the direction and control of his employer subject to orders and ready for immediate response when called for active service by his superior officer, whether in the day or at night, while here the contrary affirmatively appears. The car in which Guastelo bunked had no more connection with the accident than would any boarding house at Delhi in which he might have been living. While, owing to the nature of the work, which at times was remote from where men could secure accommodation, it was customary for defendant to furnish bunk cars on a siding near the work for the laborers to use if they desired, free of charge, it was not compulsory for them to do so, and some did not. Of this the foreman testified:

"It is nothing to us whether the man lives in the car or where he lives. He can live wherever he wants to, if he can get a boarding house. Sometimes you have men that won't stay in the car."

Had the nature of Guastelo's employment been such that his services might be needed at any time, and by the terms of his hiring he was required to stay in one of the bunk cars where he worked, or the car at Delhi, within reach, on duty, ready to respond at any moment when ordered to service, it might well be urged that the relation of employer and employee yet continued; but it is undisputed here that half an hour before Guastelo was injured the work in which he was engaged was ended for the day and he set free from the direction and control of his employer, at liberty to go when and where, and do whatever he chose until he reported for the duties of another day on the following

morning. At his pleasure he lingered in the gathering twilight until he says it was dark, and had then gone some distance down the railroad from the place of his employment on his way to where he lived when injured by a train coming towards him on the track he was traveling.

It is recognized by text-writers upon this subject as a general rule that injuries sustained by an employee while going to or returning from his day's work, when there is no contract of transportation, are not to be regarded as arising out of or received in the course of his employment. 1 Bradbury on Workmen's Compensation (2d Ed.), p. 404; Boyd on Workmen's Compensation, § 486; Ruegg on Workmen's Compensation, p. 82; Harper on Workmen's Compensation, §§ 32-34.

The testimony returned in this record furnishes no exceptions to this rule, which support an implied finding, upon which this award is necessarily predicated, that the injury in question arose in the course and out of appellee's employment at Osborn Pit, which had ceased and from which he was released an half hour before it occurred.

We think the following cases, which sufficiently state the rule and discuss the question involved, are well in point and controlling here: *Benson* v. *Railway Co.*, *supra; Caton* v. *Steel Co.*, 39 Scot. L. R. 762; *Anderson* v. *Coal Co.*, 3 B. W. C. C. 539; *Fumiciello's Case*, 219 Mass. 488 (107 N. E. 349) ; *Hills* v. *Blair*, 182 Mich. 27 (148 N. W. 243).

The decision of the industrial accident board is therefore reversed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and BROOKE, JJ., concurred. PERSON, J., did not sit.