## AHO v. CHICHAGOFF MINING CO.

(First Division. Juneau. April 24, 1922.)

No. 2161–A.

**1. Master and Servant ⬅➡375(1), 401—Damages—Miners' Compensation Acts.**

Plaintiff brought a common-law action for damages resulting from the fall of defendant's bunkhouse situated on tidelands belonging to the United States opposite defendant's mining claims, where plaintiff was engaged as a laborer by defendant. The complaint alleged employment in defendant's mining claim with 60 other miners; the duty of the defendant to provide a safe place for plaintiff to sleep, and that the defendant provided the bunkhouse described, which, being insecurely set up on high timbers was unsafe and fell before a sudden wind, and thus injured plaintiff. On general demurrer to the complaint, *held*, the injury sued for arose "out of and in the course of his employment" in the defendant's mine, and since it is not alleged in the complaint that either the plaintiff or the defendant had rejected the terms of section 1, c. 71, Sess. Laws Alaska 1915, known as the Alaska Miners' Compensation Act, the complaint does not state a cause of action against the defendant under the statute, and the demurrer is sustained.

**3. Master and Servant ⬅➡394, 401—Pleading—Workingmen's Compensation Act.**

Before an employee in mining operations in Alaska can bring a common-law action against his employer for personal injuries sustained, arising out of and in the course of his employment, it is necessary that he, or his employer shall have rejected the terms of the Workingmen's Compensation Act (chapter 71, Sess. Laws Alaska 1915), and it is further necessary that, in such an action, he must affirmatively negative the presumption of the statute to the effect that he is without the terms thereof: Provided the injury shall have arisen by accident, out of and in the course of his employment.

This action is for damages for personal injuries alleged to have been received by the plaintiff in the collapse of a certain lodging house or building of defendant, the Chichagoff Mining Company.

The complaint, to which the defendant has interposed a general demurrer, declares that the defendant is, and was at all times mentioned, engaged in the mining business at Chichagoff, in this division and territory; that on September 29,

⬅➡See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1921, the plaintiff was in the employ of the defendant as a laborer on the mining claim of the defendant, during eight hours of each day, under contract by which the defendant agreed to pay him $6 a day and furnish him lodging; that under such contract of employment he, the plaintiff, was required to, and did, with a large number of other laborers—that is to say, about 60—lodge and sleep in a certain two-story, board and lumber building belonging to the defendant, and that the plaintiff occupied a room in said building, on the date mentioned, under the contract aforesaid, which said room, in said building so provided by the defendant, and in which the plaintiff was so required to lodge and sleep, was the property of the defendant, recently erected by the defendant for that purpose, adjacent to its mining claim, where said plaintiff was employed in the daytime; that the said building was known to the plaintiff and the other employees of the defendant as the bunkhouse or sleeping quarters of the employees of defendant, and that the said employees, including the plaintiff, were required by defendant to lodge, occupy, and sleep therein.

Then follow allegations as to the duty of defendant to furnish a safe place for plaintiff to sleep, and its failure to properly construct the building in certain particulars, and that, by reason of such defects, the building was blown over and collapsed on September 29, 1921, and that the plaintiff was caught in the falling building and injured through the negligence of the defendant, and prays for judgment in the sum of $7,500 for injuries so sustained.

Wickersham & Kehoe, of Juneau, for plaintiff.

H. L. Faulkner, of Juneau, for defendant.

REED, District Judge. From the argument of counsel for plaintiff, the prayer for damages in the sum of $7,500, and other indicia in the form of complaint, I take it that this action is not brought under the provisions of chapter 71, Session Laws of Alaska 1915, known as the Miners' Compensation Act, but that it is brought as a common-law action, for personal injuries, against the employer, for negligence, by the employee. In fact, the demurrer of the defendant is laid on that ground; that is to say, that it purports to be a common-law action, and should have been brought under the Compensation Act aforesaid. Under section 1, chapter 71, Session

6 A.R.—34

Laws of Alaska 1915, known as the Miners' Compensation Act, it is provided that "any person, * * * association or corporation employing five or more employees, * * * who shall not have" rejected "the provisions of this act, * * * shall be liable to pay compensation, in accordance with the schedule herein adopted, to each of his, her, their, or its employees who receives a personal injury by accident arising out of and in the course of his or her employment, * * * provided, the employee so injured had not, prior to the time of being so injured, given notice" in the manner provided in the act of his or her election to waive or reject the provisions thereof. Then follows the schedule for compensation to the beneficiaries in case of death of the employee from such injury. The same section 1 of the act then provides that, where the employee receives an injury arising out of and in the course of his employment, as a result of which he is totally and permanently disabled, he shall receive compensation according to the schedule following. The section then provides for partial disability arising from an accident in the following language:

"Where any such employee receives an injury arising out of, or in the course of, his or her employment, resulting in his or her partial disability, he or she shall be paid in accordance with the following schedule." Section 1, subd. (e).

The section then further provides that, where an injury to an employee arising out of and in the course of his employment, by reason of which he is partially disabled and such disability is permanent in character, and does not come within the specified items scheduled, he shall receive compensation in a sum bearing the same relation to the amount receivable by him if he were totally and permanently disabled as the loss of his earning capacity bears to his normal earning capacity.

Section 7 of the act provides that the right to compensation for an injury and the remedy therefor granted by the act shall be in lieu of all other rights and remedies now existing under the common law or otherwise, and no rights or remedies, except those provided for by the act, shall accrue to employees entitled to compensation under the act.

Section 28 provides that, where five or more employees are employed in mining operations, it shall be presumed that the

employer has elected to come within the provisions of the act, and pay compensation according to the terms thereof to employees for personal injuries arising out of and· in the course of employment, and in such case shall be relieved from liability for recovery of damages or other compensation, except as provided in the act.

Section 30 provides that it shall be conclusively presumed that every such employer has elected to pay compensation to employees for injuries sustained by accident arising out of and in the course of employment, unless and until notice shall have been given as provided therein.

Section 32 provides that, where the employer and employee have not given notice to reject the terms of the act, the act shall constitute a part of every contract of hire, and the same shall be construed as an agreement on the part of the employer to pay, and on the part of the employee to accept, compensation in the manner provided by the act for all personal injuries sustained, arising out of and in the course of his employment.

Section 33 provides that all employees shall be conclusively presumed to have elected to take compensation in accordance with the terms and conditions and provisions of the act until notice in writing shall have been served on the employer and recorded as provided therein.

From the foregoing it must be concluded that, before an employee in mining operations can bring a common-law action against his employer for personal injuries sustained, arising out of and in the course of employment, it is necessary that he or his employer shall have rejected the terms of the act; and it is further necessary that, in such an action, he must affirmatively negative the presumption of the statute to the effect that he is without the terms thereof: Provided the injury shall have arisen by accident out of and in the course of his employment.

In the instant case, in the complaint, the defendant is alleged to be in the business of lode mining; that the defendant required him to lodge in a certain house, with a large number of other laborers, to wit, about 60; that said building was known to the plaintiff and such other occupants, and was used as the sleeping quarters of the employees of the defendant, and that said employees, including the plaintiff, were required

by defendant to lodge therein. Under this declaration, then, there can be no other conclusion than that the defendant company was employing five or more men in connection with mining operations within the territory, and therefore came within the provisions of the Miners' Compensation Act aforesaid. The terms of the act, therefore, became a part of the contract of employment of defendant, and no action for compensation or damages will lie for an injury sustained by the defendant, arising out of or in the course of his employment, other than that provided by the act. Hence, if the injury complained of by the plaintiff arose by accident, out of and in the course of his employment, then this action would not lie.

The question, then, resolves itself into one proposition, namely, in the event a mining employer requires, in his contract of employment, his employees to lodge and sleep in a building provided by the employer for that purpose, and the employee, while so occupying the house, and not engaged in actual labor, is injured because of the defective construction of such building, whether such injury arose by accident out of and in the course of employment.

Undoubtedly the injury complained of in this case arose by accident. An accident, as used in the statute, denotes some mishap, unforeseen and unexpected, and, as was said by an eminent jurist, the statute contemplates injuries not expected or designed by the workman himself. The injury complained of arose from the collapse of the building in a high wind. Consequently, it could not reasonably have been foreseen or expected by the plaintiff, and therefore was an accident as contemplated by the statute.

But the question whether the injury arose out of and in the course of plaintiff's employment is a more serious one. There has not been any clear or exact definition of the meaning of the expression "arising out of and in the course of employment." The editor of Ruling Case Law, in his discussion of that phrase, uses this language:

"Practically every court has offered an explanation for these words without success. The precedents of other courts are treated with suspicion. Later cases repudiate the labored explanations of the earlier ones, with the result that the whole subject has been greatly confused. Indeed, the opinions, under the statute have, if such a thing were possible, intensified the common-law maze of apparently conflicting and often unintelligible statements of ob-

servations and reasonings which thoughtful judges deplore. Looking behind the dicta of judges and publicists, we will perceive the responsibility before 'the law rests upon certain fundamental elements which, if borne in mind will dispel confusion of previous decisions and furnish a simple test for future determination.

"These fundamentals, as applied to the class of cases under consideration are that the injury to the employee shall have been foreseen as the result of his engaging in the employment. *  *  *

"The leading authority on the definition of the terms referred to, is the McNicol Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, which has been cited and quoted in many opinions. In that case the Massachusetts court says that 'the injury, in order to warrant payment of compensation, must both arise out of and also be received in⁰ the course of employment. Neither alone is enough.' It is not easy to give a comprehensive definition of these words. An injury is received in the course of employment when it comes while the workman is doing the duty which he is employed to perform. It arises out of the employment when there is a casual connection between the conditions under which the work was required to be performed and the resulting injury. If the injury can be shown to have been contemplated by a reasonable person familiar with the whole situation, then it arises out of the employment. A cause of danger must be peculiar to the work and not common to the neighborhood. It need not be foreseen or expected, but after the event, it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence." 28 R. C. L. p. 797.

Again, on page 801, R. C. L., citing many authorities to that effect, these words are used:

"It is commonly held that 'arising out of' does not mean the same as 'in the course of' and that the Legislature has imposed a double condition. The injury must not only arise in the course of but also out of the employment. Proof of one without the other will not bring the case within the act. While an accident arising out of an employment almost necessarily occurs in the course of it, the converse is not true. An injury which occurs in the course of the employment will ordinarily arise out of the employment, but not necessarily so."

It is evident that under our statute, in common with most Workmen's Compensation Acts, to·bring the case within the statute the injury must not only arise out of 'but also in the course of employment, and if the accident did not arise out of either one of the two, the action at common law would lie in this case. Taking the question of whether the accident arose out of the employment, the test given in the McNicol

Case above cited is: Was there a causal connection between the employment and the accident?

Taking the instant case, it appears from the allegations of the complaint that the employer was to furnish the employee, besides his pay, his lodging while employed, and that the employee was required to lodge in the building which collapsed. It became the duty of the employer, therefore, to furnish the employee a safe place to sleep and lodge, and it was reasonably in contemplation of the parties that the employee took the risk that the place in which he was required to sleep, as furnished by the employer, was safe, when entering into the contract of employment.

In Holland-St. Louis Sugar Co. v. Shraluka, 64 Ind. App. 545, 549, 116 N. E. 330, 331, the Appellate Court of Indiana thus lays down the doctrine:

"The causal relation is established when the accident is shown to have arisen out of a risk which a reasonable person might have comprehended as incidental to the employment at the time of entering into the employment, or when the evidence shows an incidental connection between the conditions under which the employee works and the resulting injury."

—citing a large number of cases. And the court then goes on to say:

"Such acts as are necessary to the life, comfort, and convenience of the workman, while at work, though personal to himself, and not technically acts of service, are incidental to the service; and an accident occurring in the performance of such acts is deemed to have arisen out of the employment. Such acts are regarded as inevitable incidents of the employment, and accidents happening in the performance of such acts are regarded as arising out of and in the course of the employment."

In Coronado Beach Co. v. Pillsbury, 172 Cal. 682, 158 Pac., 212, L. R. A. 1916F, 1164, the Supreme Court of California, through Justice Melvin, say:

"The accidents arising out of the employment of the person injured are those in which it is possible to trace the injury to the nature of the employé's work or to the risks to which the employer's business exposes the employé. The accident must be one resulting from a risk reasonably incident to the employment. It 'arises out of' the occupation when there is a causal connection between the conditions under which the servant works and the resulting injury. It need not have been foreseen or expected, but

after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

—citing McNicol's Case, supra.

From the foregoing it is apparent that the accident arose out of the employment. It is also clear that it arose in the course of the employment. The relation of master and servant in the instant case continued beyond the mere hours of labor of the plaintiff, because it was contemplated in the contract of employment that the plaintiff should lodge in the building provided by the defendant for its employees. The plaintiff, when injured, was doing what he was required to do under said contract, and hence the injury occurred during the course of his employment.

In the case In re Hott (Opinions of Solicitor, Dept. of Labor, p. 302), it was held that a workman whose employment required him to occupy sleeping and living quarters furnished by the government, and who was injured after hours, but at the quarters, is injured in the course of his employment. The fact that the employee was not actually engaged at labor at the time of injury does not prevent an award of compensation.

In the case of Holt Lumber Co. v. Industrial Commission, 168 Wis. 381, 170 N. W. 367, which is a case where a workman employed in a logging camp was required to sleep in a bunk furnished by the employer, and was there injured during off hours from labor, it was held that the injury grew out of and was incidental to the employment. The court, being the Supreme Court of Wisconsin, therein says:

"In the instant case, it was part of the contract of employment that Bebeau should sleep on the premises in the bunk furnished by the lumber company. It was in the course of his employment to remain upon the premises nights and use the bunk furnished for him. Under such circumstances he was within the course of his employment."

—citing a large number of authorities. The court then goes on further to say:

"The general rule under the authorities is that, when the contract of employment contemplates that the employé should sleep upon the premises of the employer, the employé under such circumstances is considered to be performing services growing out of

and incidental to such employment during the time he is on the premises of the employer."

—citing a number of authorities.

It is my opinion, from a consideration of the facts as set forth in the complaint and numerous authorities, that the injury complained of by the plaintiff arose by accident, out of and in the course of his employment, and therefore, under our statute, compensation can be had only under the Miners' Compensation Act, as set forth in chapter 71, Session Laws of Alaska 1915, and therefore the demurrer will be sustained.