NICK GUILIANO ET AL. *vs.* DANIEL O'CONNELL'S
SONS ET AL.

Third Judicial District, Bridgeport, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

An injury to an employee arises "in the course of" his employment, as contemplated by the Workmen's Compensation Act, when it occurs within the period of his employment, at a place where he may reasonably be, and while he is fulfilling the duties of his employment or is engaged in doing something incidental to it.

An injury may arise within the scope of the employment not only while the employee is doing the precise work for which he was hired or anything incidental thereto, but also while he is doing something permitted by the employer for their mutual convenience.

Guiliano *v.* O'Connell's Sons.

If the contract of employment, by its terms or incidentally, requires that, the employee lodge in quarters furnished by the employer, he is, during the time of such lodgement and' when not engaged in service purely for himself, within the scope of his employment, and his use of the lodging is an incident thereof.

The period of employment continues so long as the employee is upon the employer's premises for the purposes of his employment, and it covers his working hours plus such reasonable time as is required in passing to and from the premises, where the employer has, by knowledge, conduct or acquiescence, included that time within the term of the employment. The period ends when, at the close of the day's work, the employee leaves the premises and passes beyond the area which the employer has expressly or impliedly made incidental to the employment; and thereafter the employee is no longer in the course of his employment.

A privilege accorded to an employee to remain on the premises after the close of the day's work for the purpose of doing something for his own personal benefit and having no connection with the duties of his employment, is not an incident of the employment nor is the employee, while exercising the privilege, in the course of the employment.

The defendant employers rented a barn near the road construction job on which they were engaged and, in order to relieve the difficulty of their twenty-one employees in securing lodgings, extended them the privilege, of which fourteen availed themselves during the week in question, of sleeping in it if they so desired, no charge being made for the accommodation nor extra pay given to those who slept elsewhere. The men were paid by the hour and could terminate their employment at any time without notice. At some time after five-thirty o'clock on Saturday afternoon, when the two plaintiffs finished their work and were under no obligation to report for further duty until the following Monday, they returned to the barn and, while sleeping there, were injured in a fire which broke out about one o'clock in the morning. *Held* that since the fire did not occur within the period of the plaintiffs' employment, and since their occupation of the barn was neither expressly nor impliedly incidental thereto, their injuries did not arise in the course of their employment and were, therefore, not compensable.

The use of the barn by the plaintiffs could not be said to resemble the necessary but minor interruptions arising in the course of the day's work, or the privileges accorded by an employer for his own benefit to his employees during the noon hour, all of which occur during the progress of the work and not after its cessation.

Guiliano v. O'Connell's Sons.

The claims of two or more employees injured in the same acci-
dent may properly be joined in a single proceeding, but the
claim of each is, nevertheless, distinct and should be made
the subject of a separate award.

Argued October 29th, 1926—decided March 5th, 1927.

APPEAL by the defendants from a finding and award
of the compensation commissioner for the third dis-
trict in favor of the plaintiffs, taken to the Superior
Court in New Haven County and tried to the court,
*Ells, J.;* judgment rendered dismissing the appeal and
affirming the award, from which the defendants ap-
pealed. *Error; judgment to be entered sustaining the
appeal from the commissioner.*

*Lawrence A. Howard,* for the appellants (de-
fendants).

*Peter Trenchi,* for the appellees (plaintiffs).

WHEELER, C. J. The single question upon the ap-
peal is the alleged error of the court in holding that
the commissioner did not err in overruling the respond-
ents' claim that the injuries of the claimants did not
arise out of and in the course of the employment. The
ruling was made by commissioner and court upon an
agreed statement of facts which, in substance, were
these: The respondent employers were engaged in
Meriden in building a road. On account of the diffi-
culty in their men procuring lodging the employers'
rented, in a residential district, a barn in the vicinity
of the job, and gave their men the privilege of sleeping
in it if they desired. Fourteen of their twenty-one
men had during the week preceding the casualty to
the claimants, slept in this barn, the rest securing
quarters elsewhere. Whether any of these men slept
in the barn more than one night during this week does
not appear in the agreed facts. No charge was made

by the employers to those sleeping in the barn, or for the use of the gas stove which they had installed in the barn and on which the men were permitted to cook their meals, and no extra pay was given to the men who slept elsewhere.

On Saturday, August 15th, the work of four of these men ended at 5:30 p.m., and they were under no obligation to report for further duty until the Monday morning following, at which time the employers expected they would return to work. The men were paid by the hour and had the right to quit work at any time without notice. At one o'clock a.m., on Sunday, August 16th, the barn in which the men were sleeping caught fire and two of these four men were burned to death; the other two, Nick Guiliano and Frank DiStazio, plaintiffs-claimants, escaped with minor injuries. In the year preceding, these employers had seven other jobs in none of which had they furnished sleeping lodgings for their men, except in one job, in which about sixteen out of sixty or eighty employed, were furnished sleeping accommodations. Neither the finding, nor the appeal therefrom give, as they should, the names of the plaintiff-claimants. The judgment of the Superior Court does give these.

If the agreed facts show that the claimants' injuries did not arise in the course of their employment they cannot be held to have arisen out of that employment; the disposition of the first of these questions adversely to the claimants' contention would make the disposition of the second question unnecessary. In *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 97 Atl. 320, we determined when an injury to an employee arose out of an employment; we say, at page 308: "An injury to an employee is said to arise in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be,

and while he is . . . fulfilling the duties of his employment, or engaged in doing something incidental to it." In a case handed down at the same term, *Mann* v. *Glastonbury Knitting Co.,* 90 Conn. 116, 96 Atl. 368, we had already held that an injury arising within the scope of the employment was not only one arising while the employee was doing the precise work he was hired to do, or something incidental to it, but also something which he was permitted by the employer to do for their mutual convenience. In *Harivel* v. *Hall-Thompson Co.,* 98 Conn. 753, 755, 120 Atl. 603, we expressly approved of the statement which we quote from *Larke* v. *Hancock Mutual Life Ins. Co., supra;* see also *Richards* v. *Indianapolis Abattoir Co.,* 92 Conn. 274, 276, 101 Atl. 604.

It is beyond controversy that an employee, who is required by the terms of his employment, or as incidental to it, to lodge in quarters furnished by the employer, during such time is, when not engaged in service purely for himself, within the course of his employment. But this general statement does not determine whether these claimants, while they slept in the barn, were engaged in doing something so incidental to their employment as to then bring them within the course of their employment. We must go further and ascertain what acts will be held incidental to their employment, and whether sleeping in this barn could, under the circumstances, be held to be incidental to their employment. If it be so held, it must be further held that the injury occurred within the period of their employment, at a place where they might reasonably be, and while they were fulfilling the duties of their employment. They were in the barn by the permission of their employers, and if sleeping within the barn was an incident of their employment it must be held that they were fulfilling the

duties of their employment. So the real disputable questions are, whether the injury occurred within the period of their employment, and whether sleeping in the barn was incidental to their employment. The employment continues so long as the employee is upon the employer's premises for the purposes of his employment.

The period of employment covers the working hours of the employee, and such reasonable time as is required to pass to and from the employer's premises in going to or from work where the employer has, expressly or impliedly, by his knowledge and conduct or acquiescence, included within the term of employment the time in going to or from work. When the employee at the close of his day's work leaves the premises of his employer and passes beyond the area which the employer has expressly or impliedly made incidental to his employment he is no longer in the course of his employment because its period has ended.

When the employer provides him with lodging and requires him to occupy it, during his use of it he will be within the period of his employment when in such occupation, and his use of the lodging will be an incident of his employment, for he is there in compliance with his employer's orders, and while he obeys these and does not embark upon a frolic or business of his own, he must be held to be in the course of his employment.

When, however, the employer says to the employee, after his days' work is done, "You may grind your axe upon my wheel," the employee in accepting this proffer is not in the course of his employment for that has ceased; he is fulfilling, not the duties of his employment, but his own personal desire. Privileges such as this, though they would not have been accorded him unless he had been in the service of his employer, can-

not be held to be incidents of his employment. If, when these claimants had finished their day's work at 5:30 p. m., and left their employer's premises and gone to a lodging-house kept by a stranger to their employment, it could not be maintained that they were, while there, in the course of their employment.

No more could it be contended that after their day's work and while absent from their employer's premises they would, during this absence, still be in the course of their employment.

The sleeping of the claimants in the barn is wholly dissimilar to the necessary but minor interruptions in the course of the day's work, or to the privileges accorded by the employers to the employee during a noon hour for his own benefit. These all occur during the progress of the work, not after its cessation. The injury to these claimants occurred seven hours and more after the day's work was ended, in a lodging which the employers, for their own convenience, furnished them. It was optional with them whether they made use of this privilege or not. The employers did not expressly include this privilege within the terms of their employment, nor did they impliedly do so; the facts agreed upon show that they never intended to include this as an incident of the employment. We have never held that the employee continued in the course of his employment after the day's work was done, unless the employment was continuous, or the work incident to it, and the injury occurred shortly after the day's work had ended. We have never been required to pass upon a case presenting the precise situation this case presents, but the principles governing this decision are involved in the cases which we have determined and to which we now refer. An injury received by an employee arises in the course of his employment while the employee is riding, pursuant

Guiliano *v.* O'Connell's Sons.

to his contract of employment, to and from his work, in a conveyance furnished by his employer. *Swanson* v. *Latham,* 92 Conn. 87, 90, 91, 101 Atl. 492; *Sala* v. *American Sumatra Tobacco Co.,* 93 Conn. 82, 105 Atl. 346. This is an example of an express contract of employment. While the employee is riding to and from his work, not under his express contract of employment, but by the direction of his employer, with the latter's knowledge of the continued practice and his acquiescence in it we have held it to be an assumption of obligation to transport the employee. *Saba* v. *Pioneer Contracting Co.,* 103 Conn. 559, 563, 131 Atl. 394. This is an example of an obligation implied from the conduct of the employer.

Long-continued use of an approach to a place of business by its employees, with the knowledge and acquiescence of the employer, we held to have annexed the right to such method of approach as an incidental term to the contract of employment of the employees so using it. *Procaccino* v. *Horton & Sons,* 95 Conn. 409, 412, 111 Atl. 594; *Corvi* v. *Stiles & Reynolds Brick Co.,* 103 Conn. 449, 453, 130 Atl. 674. So the right of an employee to stop on his way home after work at a store maintained on his employer's premises, was found in the consent or invitation of the employer that the employee might thus stop. This privilege we held to have become annexed to the contract of employment as an incidental term. *Merlino* v. *Connecticut Quarries Co.,* 93 Conn. 57, 60, 104 Atl. 396.

Again, we have the obligation implied from the conduct of the employer. All of these instances, it will be noted, shortly precede the going to, or follow the departure from, the business place of the employer. The cases of *Mason* v. *Alexandre,* 96 Conn. 343, 113 Atl. 925, and *Mann* v. *Glastonbury Knitting Co., supra,* are in another class, namely, where the em-

ployee is in the course of his employment but departs from it for his own purposes, and so his injury is not held to arise out of his employment. *Lake* v. *Bridgeport*, 102 Conn. 337, 345, 128 Atl. 782, is not in point; the claimant, a policeman, was acting in obedience to the orders of a superior. *Harivel* v. *Hall-Thompson Co.*, 98 Conn. 753, 755, 120 Atl. 603, is also not in point; it was the case of a salesman whose employment was continuous, and his employer, under his contract of employment, paid for his lodging and board, and paid him a weekly salary and commissions. We said (p. 756): "There can be no difference in principle between the furnishing of lodging and board by the employer upon his own premises, or upon the premises of another. The hotel lodging furnished by the defendant to the plaintiff was its own for the time being, which it supplied to its salesman. . . . Between the salesman whose lodging and board is paid for by the employer and the servant who is treated in the same way, there is no substantial difference."

The continuousness of the employment made the case similar in principle to that of the house servant, the sailor, or the lumberman in a remote lumber camp. There is no continuity of employment in the case before us. These claimants were not required to lodge and board upon the employers' premises, but might come and go at their will.

The case of *Orsinie* v. *Torrance*, 96 Conn. 352, 113 Atl. 924, comes somewhat nearer the present case. The employer added the cost of transportation to and from work to the agreed daily wage. The employee was injured while waiting beside the highway to obtain transportation. We gave our reason for vacating the award, in these words (p. 355): "The fact that because of the location of the work this wage included a sum measured by the cost of transportation by trolley

to and from the work, is of no more significance than if it had included a sum measured by the additional cost of food at that place. The plaintiff was left free to buy his own transportation or not. As soon as he left the employer's premises, the contract of employment ceased to operate, directly or indirectly, either as controlling his movements or as affecting the hazards to which he was subjected." The employee was free to select his transportation, and use the money given him by his employer for this purpose, or not, at his option, and that his employment ceased as soon as he left his employer's premises, distinguishes this case from that of *Swanson* v. *Latham, supra,* where the furnishing of transportation was a part of the contract of employment. In the instant case, when the day's work ended and sufficient time had elapsed to enable the claimants to leave their employers' premises, the contract of employment ceased to operate. If the employees, after the day's work had ended, had returned to their employers' premises for the purpose of sleeping, or gone to the barn to prepare their supper, or to rest, preparatory to sleeping, their contract of employment would neither have been renewed nor continued. The privilege of using the barn as a lodging was not an incident of their employment. It did not immediately precede or follow the employment, neither was it exercised in the performance of their duty to their employers. It does not come within the cases to which we have referred where the employee was engaged in an incident of his employment, either by the express or implied sanction of his employer. In other jurisdictions the immediate question which concerns us has been decided, upon facts identical or quite similar, adversely to the claimants' contention. These cases arise out of the same provision of a statute which we are called upon to construe and apply. The terms

"arising out of and in the course of the employment" appear in the English Compensation Act and were adopted in the Compensation Acts enacted in almost all of our States. The decisions of the jurisdiction of the origin of this term and those of the State jurisdictions which have adopted it have therefore a far greater weight than would attach to their construction of a statute which had not had a common origin.

The English law was settled in the case of *Philbin* v. *Hay,* decided in the Court of Appeal in 1918, 87 L. J. (K.B.) 779, 782, 11 B. W. C. C. 85. The salient facts were these: The employer provided sleeping quarters for his workmen for which they were required to pay a small charge for each night used. It was optional with the men whether they slept in the hut or not, but it was impossible for most of the men to find accommodations elsewhere. The court held that it was no part of the contract of employment to occupy the hut and it emphasized the factor that after the men had ended their day's work they could go where they pleased, and since they were paid by the hour, leave their employment if they chose. Swinfen Eady, Law Judge, points out with great clarity the difference between the employment of the workmen in this hut and the continuity of the employment of the domestic servant, or the sailor. "During the time," he says, "the domestic servant is having his meals on the master's premises or sleeping on his master's premises, the course of the employment continues, and it is not interrupted. But supposing the servant goes out for a few hours for his own purposes, the course of the employment is thereby interrupted. . . . This man [the workman in the hut] was not living in the hut upon any term of contract for his employer's benefit that he should be there. He was given the choice, and was as free as possible to come or go." *Chitty* v. *Nel-*

*son,* 2 B. W. C. C. 496, 498, 126 L. T. J. 172, holds that a servant girl suffocated in her bedroom was in the course of her employment. *Danville, U. & C. Ry. Co.* v. *Industrial Commission,* 307 Ill. 142, 146, 148, 138 N. E. 289, was the case of a railroad bridge repairman who was privileged to eat and sleep in a bunk-car of his employer, but there was no obligation arising out of his contract of employment requiring him to eat or sleep there. He was injured in the bunk-car by contact with an electric wire about midnight after his day's work was done. The court held: "Permitting the men to use the bunk-car at the time of the accident was, from the evidence in the record, purely a voluntary act on the part of the company, and was a mere acquiescence on its part to permit the bunk-car to be occupied at the time by such of the men as desired. . . . It is manifest from the evidence that the accident here in question did not happen during the period of Busz's employment, and that while he was privileged to stay in the bunk-car he was not required to do so at the time of the accident, and therefore, under the authorities, he was not at the time of the accident within the scope of the employment."

*Guastelo* v. *Michigan Central R. Co.,* 194 Mich. 382, 160 N. W. 484, was the case of an employee in a construction gang on the defendant railroad who had the privilege of staying in a bunk-house furnished by his employer. After the day's work, on his walk to the town on defendant's tracks, the employee was struck by a train. The opinion of the court thus disposes of the case (p. 387): "The car in which Guastelo bunked had no more connection with the accident than would any boarding house at Delhi in which he might have been living. While, owing to the nature of the work, which at times was remote from where men could secure accommodation, it was customary for de-

fendant to furnish bunk-cars on a siding near the work for the laborers to use if they desired, free of charge, it was not compulsory for them to do so, and some did not. . . . Had the nature of Guastelo's employment been such that his services might be needed at any time, and by the terms of his hiring he was required to stay in one of the bunk-cars where he worked, or the car at Delhi, within reach, on duty, ready to respond at any moment when ordered to service, it might well be urged that the relation of employer and employee yet continued; but it is undisputed here that half an hour before Guastelo was injured the work in which he was engaged was ended for the day and he set free from the direction and control of his employer, at liberty to go when and where, and do whatever he chose until he reported for the duties on another day on the following morning. At his pleasure he lingered in the gathering twilight until he says it was dark, and had then gone some distance down the railroad from the place of his employment on his way to where he lived when injured by a train coming toward him on the track he was traveling. It is recognized by text-writers upon this subject as a general rule that injuries sustained by an employee while going to or returning from his day's work, when there is no contract of transportation, are not to be regarded as arising out of or received in the course of his employment."

It was held in *Griffith* v. *Cole Bros.*, 183 Iowa, 415, 165 N.W. 577, that a bridge builder, who having finished his work for the day and while sitting in a boarding tent furnished by his employer was struck by lightning, was injured in the course of his employment since his employment was continuous and he was where his duty required him to be in order to begin the next day's work, but that the injury did not arise out of the employment. We cite this case not in neces-

sary approval of its ultimate conclusion, but as an illustration of a continuous employment.

*Lauterback* v. *Jarett,* 189 N. Y. App. Div. 303, 305, 178 N. Y. Supp. 480, was the case of an apartment janitress who received the free use of an apartment as part of her compensation, and as she sat down to her breakfast. was injured by falling plaster. The court held: "At the time of the accident she was doing nothing for her employers nor anything incidental thereto. Her duty to them did not require her presence in her apartment."

The necessity for a finding that the employee was at the time of the injury engaged in the work for which he is employed or as a natural incident to it before he can be held to have been in the course of his employment is further illustrated in *Daly* v. *Bates & Roberts,* 224 N. Y. 126, 120 N. E. 118, and *Savoy Hotel Co.* v. *Industrial Board,* 279 Ill. 329, 116 N. E. 712.

We have not found a case which has held that, after the employee has finished his day's work and either left his employer's premises, or the means of transportation therefrom furnished or provided by his employer, or used by him with his employer's knowledge and consent, express or implied, or passed from the premises of the employer by the method of departure recognized and sanctioned by the employer, the employee was still in the course of his employment, unless his employment was continuous, as in the case of a sailor, a domestic servant, certain salesmen whose employment is continuous, or employees in lumbering, or a mine, where the nature of the occupation and the order or provision of the employer, required them to live in a designated building. Examples of the latter class are found in *Ocean Accident & Guarantee Corporation* v. *Pallero,* 66 Colo. 190, 180 Pac. 95; *Holt*

Guiliano *v.* O'Connell's Sons.

*Lumber Co.* v. *Industrial Commission,* 168 Wis. 381, 170 N. W. 366, and *Aho* v. *Chichagoff Mining Co.,* 6 Alaska, 528.

Nor have we found case or authority, which has held that an employee,—who at his own option, after his day's work is ended, is upon his employer's premises, by the permission of the employer—is, while there, within the scope of his employment so that his employer would be held liable to pay him compensation for an injury then happening to him. An employee in such a voluntary situation could not be held to be engaged in the employment of his employer, or in that which was incidental thereto, without abandoning the definition of when an injury arises in the course of an employment which we adopted in *Larke* v. *Hancock Mutual Life Ins. Co., supra,* and have ever since adhered to.

The creation of a liability upon employers upon their granting optional privileges to their employees, such as in this case, would, we fear, have the unfortunate effect of deterring employers from granting any privilege to their employees.

The only award in this proceeding was a single fee to the doctor who attended both claimants, and we assume that he performed his services to them jointly. We call attention to this for the purpose of indicating the proper procedure. The joinder of the claims of two or more employees, injured in the same accident, may be properly made in a single action, but the claim of each is distinct and a separate award should be made to each.

There is error, the judgment is set aside, and the Superior Court directed to enter its judgment sustaining the appeal from the commissioner.

In this opinion the other judges concurred, except MALTBIE, J., who dissented.