## LEYMAN v INDUST. COMM.

Ohio Appeals, 8th Dist, Cuyahoga Co

No 18323. Decided Dec 8, 1941

Milton R. Landy, Cleveland, and Silber & Soltz, Cleveland, for plaintiff-appellee.

Thomas J. Herbert, Attorney General, Columbus; E. P. Felker, Columbus, and A. B. Conn, Columbus, for defendant-appellant.

## OPINION

By MORGAN, J.

The Industrial Commission of Ohio denied compensation to the plaintiff on account of the death of her husband, Thomas Leyman, an employee of the Cedarcrest Sanitarium located in Bay Village, Ohio, which occurred on December 14, 1939. On appeal to the Court of Common Pleas a jury was waived and the trial court found in favor of the claimant.

The sole issue in the case is whether or not plaintiff's decedent sustained his fatal injury while in the course of and arising out of his employment by the Cedarcrest Sanitarium.

The record shows that Cedarcrest Sanitarium houses and treats about sixty patients suffering from nervous and mental diseases. The sanitarium is located just north of Detroit Road and consists of three buildings; one for male patients, one for female patients, and another an administration building between the two other buildings and being the nearest to Detroit Road. Immediately west and adjacent to the sanitarium premises, the sanitarium had rented a house for the purpose of housing its employees.

Both plaintiff and her husband had been employed for a little over two years by the sanitarium. There were four male attendants at the hospital and their work was divided into two shifts of twelve hours each; the decedent having been regularly employed with another on the night shift from 7:00 P. M. to 7:00 A. M. He was paid $50.00 per month in wages, together with his meals and a room in the attendants' building. Mr. Leyman and the other employees were given one day off each week. His day off was Thursday, December 14th. The record, however, shows that on the afternoon of that day he was either called, or volunteered to assist in handling and feeding male patients as one of the two day men was sick. It was cus-tomary in such an emergency for the employees of the sanitarium to work when they were not on duty, for which they were given extra time off by way of compensation.

After assisting in feeding the patients, and having his own dinner, Leyman was last seen by Mrs. Walker, the manager of the sanitarium, in the main administration building about 5:30 P. M. on the day in question. At that time he was doing nothing, having finished with the feeding of the male patients. Leyman was next seen a little after 6:00 P. M. lying unconscious near the south curb of Detroit Road opposite and about fifty feet west of the west gate located between Detroit Road and the sanitarium. No one saw the accident but it was stipulated at the hearing that Leyman was struck by a hit-skip driver, resulting in his death shortly after the time he was injured.

Plaintiff's contention was that Leyman was struck while proceeding to his living quarters west of the sanitarium; that the maintenance of these quarters was essential to the proper performance of his duties and that he was fulfilling his contract of hire in returning to his living quarters where he would be subject to call. That the risk of so traveling was contemplated when he entered the employment of Cedarcrest Sanitarium, as an incident of or as belonging to the employment.

The evidence discloses that there were two ways in which Leyman could go to his living quarters from the sanitarium. He could go through a gate in the fence located on the line between the sanitarium and the attendants' building, but a more convenient and shorter way for anyone in the administration building was to go north and through the west entrance gate at Detroit Road and then proceed westerly for about 100 feet to the gateway to the premises on which the attendants' building was located. This was the method usually taken by the employees who wished to go from the administration building to their living quarters to the west, and the management of the

sanitarium knew of and acquiesced in their employees so doing.

If there is evidence in this record from which the trial court could reasonably have found that Leyman was returning to his living quarters from the administration building when he was struck by a passing █ automobile, there is respectable authority for the proposition that Leyman met his death while acting in the course of his employment from an injury arising out of the employment.

The following authorities distinguish the case of an employee living on the premises of the employer as a part of his contract of employment, from the case of an employee living in his own home removed from the place of employment. This result is based on the fact that while the employees are on the employer's premises, even when off duty, they are subject to call at any time.

Jelliotte v Hoffman Co., 246 New York. 279; Ciuliano v O'Connell Sons, 105 Conn. 695. The cases are collected in 56 A. L. R. 512.

If, at the time Leyman was injured, he was not returning to his living quarters but was crossing Detroit Road to an unknown destination, it is clear to us that he would not, on such a state of facts, have been acting within the scope of his employment. Inasmuch as no one saw the accident, and therefore direct evidence as to how it occurred is missing, we must rely on circumstantial evidence as stated in **Outland v Industrial Commission, 136 Oh St 488:**

"After all, when and how the accident actually happened may be proved by circumstantial evidence. What is more, since there was no eye witness, circumstantial proof was all that was available to show the immediate facts surrounding decedent's death."

As stated, Leyman's day off was December 14th. His next period of duty was to begin at 7:00 P. M. the following day. Mrs. Walker, the sanitarium manager, testified that Leyman had the right to leave the premises and "did not have to reappear until 7:00 o'clock in the evening of December 15th." Mrs. Leyman testified that she also had the day off on Thursday, December 14th and she had gone to a woman's party on that afternoon. It was customary for herself and her husband to go to some show on the evening of their day off but she testified that she had no arrangement to meet Mr. Leyman that afternoon or evening. It is, therefore, clear that Leyman was under no duty as an employee to return to his living quarters at the time he was killed and that he was wholly free to be proceeding on some business of his own.

As a part of the evidence there was introduced a pencil sketch of the sanitarium and living quarters and of Detroit Road, being the highway in front of both premises. The sketch shows Detroit Road to have consisted of three lanes. The evidence shows that there was a pathway along and about a foot and a half or two feet north of Detroit Road leading from the west sanitarium gate to the entrance to the attendants' living quarters. If Leyman had been proceeding on this pathway clearly he would not have been injured. One of the attendants testified as to the existence of the foot-path and he was asked to indicate by dashes with a pencil the road which it was customary for the employees to follow in proceeding from the main building along Detroit Road to the gate leading to their living quarters. These pencil marks are to be found in the sketch and they are **north** of the most northerly of the three lanes of travel on Detroit Road.

That Leyman was not proceeding westerly by the ordinary route to his living quarters, is also indicated by the position when found after his injury. This is marked on the sketch and is in the most southerly of the three lines of travel on Detroit Road near to the south curb. If Leyman was going westerly to his living quarters when hit, then it is clear that the automobile which struck him was also proceeding

in a westerly direction and struck him from behind. While not impossible, it is very difficult to see how Leyman being struck from behind by a westbound automobile would have been thrown in such a manner as to have landed near the opposite or the south curb. However, if there is any doubt remaining as to where Leyman was going when hit, we think it is concluded by the stipulation that was entered into by the parties at the beginning of the rehearing of the case before the Industrial Commission. It is as follows:

"It is stipulated by and between counsel that on December 14, 1939, T. Leyman, while crossing in front of 3396 Detroit Road, was struck by a hit-skip driver, resulting in Mr. Leyman's death due to the various injuries received."

The words "while crossing in front of 3396 Detroit Road" are equivalent to a statement that Leyman was crossing Detroit Road from north to south, in front of the sanitarium, and that accordingly he was proceeding away from and not toward his living quarters, when he was struck. Inasmuch as this was Leyman's day off, and it was not necessary for him to report at the sanitarium until seven o'clock the following evening, and as it was customary for him to go to a show, or to do something disconnected with his employment on his off evening, we believe, first, that it is established by the evidence and the stipulation, that Leyman was not returning to his living quarters when he was struck by a hit-skip driver, and secondly, that there is not the slightest evidence in the record that in crossing Detroit Road from north to south Leyman was acting within the scope of his employment or was injured by a cause arising from his employment.

For the reasons stated, the judgment of the Court of Common Pleas is reversed and final judgment is entered for defendant-appellant herein.

LIEGHLEY, PJ., SKEEL, J., concur.