**LOUISIANA–MISSISSIPPI PIPELINE CONST. CORP.**

v.

**THORNTON.**

No. 14599.

United States Court of Appeals, Fifth Circuit.

June 4, 1954.

R. A. Wallace, Wallace & Greaves, Gulfport, Miss., for appellant.

R. W. Thompson, Jr., English Lindsey and Webb M. Mize, Gulfport, Miss., for appellee.

Before BORAH, and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

BORAH, Circuit Judge.

This is an appeal from a final judgment of the District Court in favor of the plaintiff Archie Thornton and against the defendant Louisiana-Mississippi Pipeline Construction Corporation in an action in tort for damages.

On the night of September 7, 1950, plaintiff, an employee of defendant, while off duty and sleeping in a tent at the site of defendant's pipeline construction job near Gulfport, Mississippi, was permanently injured when the tent caught fire and burned. Following this accident plaintiff filed with the Workmen's Compensation Commission of Mississippi a notice of his injury and a claim for compensation and medical benefits under Mississippi's Workmen's Compensation Act Code 1942, § 6998-01 et seq. After various proceedings before the Commission and in the state courts it was determined in a final judgment [1] rendered by the Supreme Court of Mississippi that plaintiff was not entitled to compensation or benefits as he was not performing any service or complying with any order of his employer at the time of his injury, and said injury did not arise out of and in the course of employment. Thereafter, plaintiff instituted this action in which he alleged: that defendant furnished the tent as sleeping quarters and invited plaintiff to use it; that defendant was in control of the tent and it was its duty to exercise reasonable care to maintain it in a reasonably safe condition; that defendant was further charged with the duty of exercising reasonable care to prevent injury to the plaintiff and with the duty to take due and suitable precautions to avoid injury and to anticipate danger; and that

---

1. The opinion of the Supreme Court of Mississippi is reported as Thornton v. La.-Miss. Pipeline Const. Co., 214 Miss. 314, 58 So.2d 795.

defendant knew or in the exercise of reasonable care should have known of the danger of fire but negligently failed to make and maintain the premises reasonably safe for the purpose contemplated. The defendant filed responsive pleadings and thereafter the case came on for trial before a jury which returned a verdict in favor of plaintiff in the sum of $15,000.

Appealing from the judgment which was entered on this verdict, the defendant is here insisting: (1) that the subject matter of the present action was determined by the prior final judgment rendered by the Supreme Court of Mississippi, and plaintiff is, therefore, estopped thereby; and (2) in the alternative and regardless of the prior judgment that the injury sustained by the plaintiff was not the proximate result of compensable negligence chargeable to the defendant.

As to the first contention the defendant admits that the question of negligence was not involved in the prior compensation hearing, and that under no conditions could that issue have been litigated under the terms of the Act itself; and since the issue was not litigated it was not determined whether the relationship of inviter and invitee existed between the defendant and plaintiff, respectively. However, defendant points out that the Supreme Court of Mississippi did hold [2] that the tent in question and another tent "were donated to such employees as cared to avail of them," and insists that in the instant action the controlling issue is precisely the same as that litigated and determined on the merits in the state court action, namely, whether defendant owned, controlled, and furnished the tent to the plaintiff, or whether defendant had donated it along with another, to those of its employees who wished to avail of them. More specifically defendant claims that it logically follows from the state court's holding that defendant divested itself of its possession of the tents and of its

right of control thereover when it delivered same to the employees and under such circumstances defendant was under no liability to plaintiff for his injury. And by reason of the foregoing it is urged that the District Court erred in denying defendant's motion for a directed verdict, which, as motion grounds, set forth among other things that all of the controlling facts constituting the subject matter of the action had been finally determined and adjudicated by the Mississippi Supreme Court.

In Partmar Corp. v. Paramount Corp., 347 U.S. 89, 74 S.Ct. 414, 415, 98 L.Ed. ——, the Supreme Court recently set forth the law pertaining to the related doctrines of res judicata and estoppel by judgment in this concise language: "We have often held that under the doctrine of *res judicata* a judgment entered in a cause of action conclusively settles that cause of action as to all matters that were or might have been litigated or adjudged therein. But a prior judgment between parties has been held to operate as an estoppel in a suit on a cause of action different from that forming the basis for the original suit 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' This latter aspect of *res judicata* is the doctrine of collateral estoppel by judgment, established as a procedure for carrying out the public policy of avoiding repetitious litigation." The law of Mississippi is in accord and to the effect that even if the prior judgment purports to affirm a particular fact or rule of law, yet, if such fact or rule of law was immaterial and collateral to the issues in the case, and the controversy did not turn upon it, the judgment will not conclude the parties in reference thereto. Thompson v. Hill, 152 Miss. 390, 119 So. 320, citing 2 Freeman on Judgments, p. 1474. This statement of Mississippi law the defendant concedes to be sound.

We think it clear that this decision of the Mississippi Supreme Court

---

2. See footnote 1.

did not turn on the fact that the tents were donated to defendant's employees. On the contrary, and though it must be conceded that the court did mention this fact among others as being important and controlling, its decision was predicated upon wholly different grounds. Namely that the evidence showed that the accident did not happen during the period of plaintiff's employment, and that while plaintiff was privileged to stay in the tent he was not required to do so at the time of the accident, and therefore, under the authorities, he was not at the time of the accident within the scope of the employment. The "bunk house cases"[3] which the state court cites as typical and in accord with its views attach little or no importance to the question as to whether the employer or the employee owned or controlled the premises where the injury occurred. Indeed, in the cited case of Wallace v. Texas Indemnity Ins. Co., Tex.Civ.App., 94 S.W. 2d 1201, and numerous cases in point with the court's decision the premises on which non compensable injuries occurred were clearly the property of the employer. See, e. g., Danville, U. & C. R. Co. v. Industrial Commission, 307 Ill. 142, 146, 148, 138 N.E. 289. It follows that the question as to who exercised ownership and control over the tents was immaterial and collateral to the issues in the state action and did not conclude the parties from raising this issue below. But even if the claimed donation could here be given the effect of a "thing adjudged" it certainly could not be given the sweeping effect of an estoppel barring this tort action.

At the trial as here defendant insisted that the employees including plaintiff owned the tents by virtue of a donation. This is clearly beside the point if there was evidence sufficient to satisfy the jury that the defendant maintained, controlled, and operated the tent, and tendered it, equipped as it was, to its employees. In such a situation as was pointed out in Cudahy Packing Co. v. Luyben, 8 Cir., 9 F.2d 32, 34, " * * * it is unimportant in whom the technical legal title or ownership may be lodged. * * * *It is clearly negligence on the part of any one, whether stranger, invitor, or employer, with knowledge of what is to be done, to maintain a place which is not reasonably safe, in view of the activities and operations therein mutually contemplated.*" The language which we have emphasized was employed by the district judge in charging the jury and the jury were correctly instructed that they would be obliged to determine from the evidence whether defendant did maintain the tent in which plaintiff was burned with knowledge of what it was to be used for and whether or not it was reasonably safe.

This brings us to a consideration of the evidence which bears on defendant's second and alternative contention that it was not guilty of the acts of negligence charged. During the period here involved plaintiff was a member of a crew of Negro laborers which accompanied defendant in its work on various pipeline construction jobs in different cities and towns in the State of Mississippi. There were twelve men in the crew including one Johnson, a Negro foreman or "straw boss", who gave the orders as to what to do and what not to do when the foreman, Ward, was away from the job. In moving around to different job sites it was sometimes difficult to obtain suitable housing accommodations for the Negro employees and on two particular instances in Taylorsville, Mississippi, it was necessary for defendant to arrange makeshift sleeping accommodations in an old garage and Johnson was given the keys thereto. Plaintiff and other members of the crew expressed dissatisfaction with these sleeping quarters on the occasion of their second visit to Taylorsville since they did not relish the idea of sleeping on the concrete floor with no bedding.

---

3. Guiliano v. Daniel O'Connell's Sons, 105 Conn. 695, 136 A. 677, 56 A.L.R. 504; Edwards v. Industrial Commission of Utah, 87 Utah 127, 48 P.2d 459; and Wallace v. Texas Indemnity Ins. Co., Tex.Civ.App., 94 S.W.2d 1201.

As a result they were informed by Ward and Johnson that tents would be made available at the next job site which was near Gulfport. In reliance on this promise the plaintiff decided to remain in defendant's employ.

On the afternoon of the first day at the Gulfport site the defendant provided and made available two tents and ten cots which its president, Daniels, had purchased at Ward's suggestion. Plaintiff came to the job site accompanied by Ward and a truck driver and shortly thereafter he and the truck driver were sent on a business errand to Lumberton and Taylorsville, Mississippi. On the same afternoon and during plaintiff's absence the other employees came on the scene with the tents and Ward told them that Daniels was the one who had sent the tents to the job. No witness for plaintiff heard him say thereafter, if he did say, that Daniels was giving or donating the tents to the employees and according to the witness Cooper, Ward's next statement was merely: "Here is some tents. You all put them up." Whereupon Ward stepped off a few paces and pointed out to the employees where they should erect the tents, the selected site being some twenty-five feet removed from a water hydrant and about two hundred feet west of defendant's right of way, on property belonging to unnamed third parties. An employee truck driver who had had army experience then assisted in the operation of raising the tents while Ward remained in the vicinity until one tent was erected. However, and before departing, Ward told the employees that he was leaving the tents in charge of Johnson and they were to keep the area sanitary, and then he told Johnson "to see after it and take care of it for him." This all took place during plaintiff's absence and when he returned. from his errand which was after dark Johnson appeared to plaintiff to be in charge in his capacity as "straw boss".

Upon plaintiff's return he looked in one of the tents and remarked that he was the only man that did not have a cot.

Whereupon Johnson ordered one of the laborers to get a cot for him and put it up, which order was obeyed; and Johnson then said to plaintiff, "Now, that's yours." He did not however tell plaintiff or his fellow employees to mark the cots as their own property and no one did so. When plaintiff was furnished the cot he immediately laid down and went to sleep.

On that same evening, an unidentified employee obtained from the company's supplies a kerosene flare and brought it into the tent adjacent to the one in which plaintiff was sleeping. These flares were provided by the company for the sole purpose of illuminating and attracting the public's attention to its open pipeline ditches and machinery and surplus flares which were not needed for this purpose were available in the camp. The flares consisted of a round kerosene tank with a hollow neck, a wick and a burner, and they burned with an open flame and smoked badly. Consequently, they were unsuitable and dangerous for use in tents as Johnson well knew for he protested when he became aware of the fact that the flare previously mentioned was being used. However, his protest was ignored and he did nothing about it though he knew that one of the laborers had on two occasions removed a flare from the tent because it was smoking and its open flame threatened to ignite his cot. This employee complained to Johnson on the following morning but Johnson did not report it to his superior, Ward, when the latter made an inspection visit to the camp. On this inspection visit Ward directed that the loose paper around the camp be picked up and disposed of but he suggested no other precautionary measures though he knew that the tents were not equipped with either water buckets or fire extinguishers nor were they furnished with any means of lighting or heating.

On the following night, and without any prior knowledge that a flare had been brought into the tent, plaintiff slept in his usual place near the tent entrance. Thereafter, and while asleep, one Ezell

Chandler brought into the tent and placed between plaintiff and the entrance a crudely constructed heating device which he had made by punching holes in the bottom and sides of a bucket and turning it upside down over a lighted flare. This crude device got out of control and ignited the tent canvas at a time when Chandler was out of the tent and plaintiff was the sole occupant. When plaintiff was awakened by the smoke and heat he saw the tent entrance ablaze and burning so fiercely as to preclude escape by running through the flames. He called for assistance and Johnson came to the tent entrance and attempted to remove the flare with a shovel but succeeded only in knocking it over, which made conditions worse. Meanwhile, plaintiff made several futile efforts to escape. Failing in these attempts, he grasped a stick which was extended through the flames by a rescuer and was assisted into the open through the flaming tent wall. The injuries complained of resulted.

■■ As applied to the facts of this case, the law is simple and plain, and we are in no doubt that a verdict for plaintiff was justified. It is clear that the evidence warranted the jury in finding that Ward and Johnson had authority to invite plaintiff to enter defendant's tents, and he, therefore, had the status of an invitee while on the premises. An invitation to enter upon property of another may be either express or implied, and the rights of the invitee and the duties of the inviter are the same in either case. Cf. Henry W. Cross Co. v. Burns, 8 Cir., 81 F.2d 856. The defendant having by invitation induced plaintiff to come upon the premises maintained by it and make use of the tent, a lawful purpose, it is liable in damages to plaintiff for injuries occasioned by its failure to exercise ordinary care in keeping the premises in a safe condition. Cf. 38 Am.Jur., Negligence, § 96 at page 756; 65 C.J.S., Negligence, § 43(1) at page 508; § 45 at pages 521 et seq.; § 81 at page 579.

■ It is true that defendant did not owe plaintiff the duty to warn him

of conditions of which he was aware. It is likewise true that Ward testified that he did at some undetermined time give a general warning to employees as to the use of flares in the tents, but the jury was not obliged to accept this testimony as neither plaintiff nor his witnesses testified to having heard such warning. In any event the jury was entitled to infer that a mere warning was insufficient under the present circumstances without further and more positive protective measures. "Where there is evidence of neglect, the question whether such reasonable care has been taken, by notice, lighting, guarding, or otherwise * * * must be determined by a jury as a matter of fact." Bennett v. Louisville & Nashville R. Co., 102 U.S. 577, 26 L.Ed. 235. The question here was one peculiarly within the province of the jury to decide and we shall not disturb its verdict.

The remaining contentions of defendant have been carefully considered but do not merit further discussion.

The judgment was right. It is Affirmed.