LUCILLE LOVALLO *vs.* AMERICAN BRASS COMPANY.

First Judicial District, Hartford, January Term, 1931.
MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued January 8th—decided March 3d, 1931.

*Milton Nahum,* with whom, on the brief, was *Julius Apter,* for the appellant (plaintiff).

*William J. Larkin,* for the appellee (defendant).

HAINES, J. The plaintiff-claimant is the widow of Donato Lovallo, and seeks an award of compensation for the death of her husband from burns received while in the employ of the defendant-respondent. After hearing the parties, the commissioner, with the obvious thought that the facts raised a doubtful question of law which the public interest required should be finally and definitely determined, sought to send the case direct to the courts for consideration, and so entered a judgment *pro forma,* under the provisions of the statute. Counsel for the claimant, however, took an appeal from this *pro forma* judgment.

The claimant sought to obtain a number of corrections and changes in the finding made by the commissioner, but all were denied by him. The evidence was not voluminous and was all certified to the Superior Court, where it was fully considered by that court, and some of the requests for changes in the finding were granted. The court sustained the award of the commissioner and dismissed the appeal, whereupon the claimant appealed to this court. A study of the evidence of record does not disclose any justifiable changes in the finding as established by the Superior

Court. The essential facts are that the deceased was employed by the respondent as a scrap sorter, supervising the assorting of different alloys of scrap which came to the respondent's mill. His duties required him to handle scrap metal, some of which was oily and greasy, and it was the custom of the workmen in this room, known and permitted by the respondent, to wear cotton jumpers and overalls, and for their own convenience and to protect their clothing, use aprons made of burlap bags. The deceased was so dressed at the time of the injury and the exposed portions of his clothing, the legs and seat of his overalls, particularly, became covered with grease and oil, and this was inflammable. The clothing of the deceased at the time of the accident was thus oily and greasy as a result of the conditions of his employment. The burlap bags themselves were of very inflammable material.

The ordinary hours for work were, in the day time, until six p. m., but twelve of the men, including the deceased, had been asked by the respondent to work overtime until nine p. m., and were allowed one half hour for lunch as part of the overtime, for the convenience of the respondent. It was known to the respondent that the men were in the habit of smoking and resting during this half hour lunch period, and the respondent acquiesced in that practice. There was no rule forbidding smoking in this room and the workmen were permitted to smoke or not as they chose. The smoking and resting was permitted by the respondent as one of the conveniences allowed to the workmen "to keep them in proper spirits for their overtime work."

On the night of April 24th, 1929, the deceased had finished lunch and then undertook to light his pipe. The match which he struck ignited his greasy and oily clothing, particularly the burlap bag he was wearing

as an apron.  The fire apparently started around the legs or seat and spread more rapidly because of the oil and grease on these portions of his clothing.  The deceased died in a hospital from his burns.  Since we adopt the finding of facts established by the Superior Court, the only remaining question raised by the appeal is the correctness of the conclusion reached by the court that the claimant was not entitled to compensation.

We are satisfied that the injury must be held to have arisen in the course of the employment.  The deceased was working overtime for the convenience and benefit of the respondent, and the half hour for lunch, during which he was injured, was a part of that overtime, for all of which he was receiving compensation.  He was clearly within the period of his employment.  He was also clearly in a place where he might reasonably be, since this room where he worked was put at his disposal during the lunch hour.  It also appears that he was reasonably fulfilling the duties of his employment by remaining overtime for work for the benefit of the respondent, and at the moment was doing something incidental to his employment.  "An injury arises in the course of the employment if it occurs while the employee is doing what one so employed may reasonably do within the time during which he is employed and at a place where he may reasonably be during that time."  *Stakonis* v. *United Advertising Corporation,* 110 Conn. 384, 389, 148 Atl. 334.  While smoking was not of course one of the obligatory duties of his employment, it was yet something which the respondent permitted at that time and place for the convenience of the men and to keep them in good spirits for their overtime work.  It is obvious, we think, that the permission to smoke was thus for the mutual advantage of the employer and

the employee. It was incidental to the deceased's employment, and a term or condition added to the contract of employment by the tacit consent of the respondent. *Mann* v. *Glastonbury Knitting Co.,* 90 Conn. 116, 121, 96 Atl. 368. "Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the Workmen's Compensation Acts, though they are only indirectly conducive to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshments, food, or fresh air, or to rest in the shade." 1 Honnold on Workmen's Compensation (1917) p. 381; *Vitas* v. *Grace Hospital Society,* 107 Conn. 512, 515, 141 Atl. 649; *Guiliano* v. *O'Connell's Sons,* 105 Conn. 695, 701, 136 Atl. 677. In *Tiralongo* v. *Stanley Works,* 104 Conn. 331, 133 Atl. 98, the only case of this character which has been before this court, the clothing of the employee was set on fire during working hours and he died as a result of the burns thus received. Compensation was denied in that case. It is clearly distinguishable from the present one by the fact that nothing done or permitted by the employer was shown to have been the causative factor in firing the employee's clothing. If, as was reasonably to be inferred, he lighted a cigarette and thus set his clothes on fire, it was done in direct disobedience of the orders of the respondent, a printed notice being posted in the toilet room reading "No Smoking," and, moreover, the rules of the factory forbade smoking during working

hours. The finding makes it clear in the present case that the act of the deceased in starting to smoke after his lunch was not merely for his own satisfaction or benefit. The respondent certainly permitted the act for a purpose partly its own, namely, to keep the workmen in good spirits for the performance of the duties of their employment. Even where an employer has no direct interest in the employee's permitted act of smoking, it has frequently been held in other jurisdictions that it is a reasonable act, common to men generally, ministering to the comfort and good spirits of the workmen, so that the employer has an incidental interest in it. *Kaletha* v. *Hall Mercantile Co.*, 157 Minn. 290, 196 N. W. 261, 263; *Chludzinski* v. *Standard Oil Co.*, 176 N. Y. App. Div. 87, 90, 162 N. Y. Supp. 225; *Rish* v. *Iowa Portland Cement Co.*, 186 Iowa, 443, 170 N. W. 532, 534; *Whiting-Mead Commercial Co.* v. *Industrial Acc. Com.*, 178 Cal. 505, 173 Pac. 1105, 1106; *Dzikowska* v. *Superior Steel Co.*, 259 Pa. St. 578, 103 Atl. 351, 352. We hold that the injury in the present case arose in the course of the employment.

It remains to consider whether the injury arose out of the employment. First, it must appear that it occurred in the course of the employment, and we hold this requirement satisfied, since the deceased was, during his employment, doing what, by the respondent's permission, he could reasonably do within the time of his employment and at a place where he was permitted by the respondent to be. Second, the injury must be shown to be the result of a risk involved in or incident to the employment, or to the conditions under which it is to be performed. *Stakonis* v. *United Advertising Corporation*, 110 Conn. 384, 390, 148 Atl. 334; *Marchiatello* v. *Lynch Realty Co.*, 94 Conn. 260, 263, 108 Atl. 799. From what has already been said,

it is obvious that this half hour for permissive lunch, rest and smoking, was a fixed incident of the employment at that time and place. By tacit consent of the respondent, the employment comprehended the service of the deceased under these conditions. If, so serving, the deceased was subjected to a danger from the permitted smoking, it was a danger peculiar to that employment, since it included only the twelve men thus employed, and was not a risk to which any member of the general public was exposed. The injury had its origin in a risk connected with the employment and was a natural sequence of that risk. It was an injury which; in the natural course of events, would not have happened save for the conditions under which the employment was being carried on.

The respondent strongly insists, however, that neither the employment nor the conditions under which it was carried on had any connection with setting fire to the clothing of the deceased. It is said the fire originated from his own act, an act done for his exclusive enjoyment; and further that the deceased, by attempting to smoke, subjected himself to a peril outside any risk connected with the employment, and that he himself imported a risk into the employment. It is argued that the pipe and the tobacco belonged to the deceased and that his injuries were due to the risk involved in the use thereof and not to the oily and greasy condition of his clothing. On the contrary, the oily and greasy condition of his clothing was the condition which exposed the deceased to a risk from lighting his pipe, to which he would not have been exposed under ordinary conditions. In other words, the risk arose from the inflammable character of the clothing resulting from the conditions of the employment. He was thus exposed to a different and a greater risk than he would have been exposed to ex-

cept for the conditions of the employment. Under ordinary conditions there is no particular hazard in striking a match to light a pipe. The risk arose when the attempt was made while wearing clothing made highly inflammable by the conditions under which he was required to work. This reasoning is supported and confirmed in all the "smoking" cases to which we have referred above, from New York, Pennsylvania, Iowa, Minnesota and California, some of which are almost directly in point. In the *Dzikowska* case, the court in awarding compensation said (p. 583): "The evidence showed that the burlap apron worn by Dzikowska for the purpose of protecting his clothes while he was working, . . . first caught fire from the match and the flames communicated to the burlap wrappings on his arms, worn for the same purpose, and also oil soaked. If he had not worn these wrappings, or if they had not become unusually inflammable by reason of the work in which he was engaged for his employer, the accident would probably not have occurred. It is not unusual for men to strike matches on their trousers, without thought of danger. . . . Dzikowska was, of course, negligent in striking the match upon his oil soaked clothes. But . . . contributory negligence . . . is not a defense." We deem the conclusion inescapable, that this injury arose out of the employment, and the two conditions justifying compensation having been satisfied, the claimant is entitled to an award.

There is error, and the Superior Court is directed to sustain the appeal and remand the cause to the commissioner to render an award in favor of the plaintiff.

In this opinion the other judges concurred.