JAMES J. HUGHES *v.* THE AMERICAN BRASS COMPANY

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued April 7—decided April 27, 1954

*William J. Larkin, 2d,* and *Walter M. Pickett, Jr.,* with whom, on the brief, was *William J. Larkin,* for the appellant (defendant).

*Harry Krasow,* for the appellee (plaintiff).

DALY, J. This is an appeal by the defendant from a judgment of the Superior Court sustaining a finding and award made by the workmen's compensation commissioner for the fifth district. The principal

claim of the defendant is that the court erred in sustaining the conclusion of the commissioner that the plaintiff's injury arose out of and in the course of his employment.

On December 4, 1952, and for a long time prior thereto, the defendant owned and operated, in the town of Ansonia, a plant which included a building known as the casting shop. The plaintiff was employed as part of the maintenance force of this shop, which was located on the easterly side of the Naugatuck River. About twenty feet to the north of the shop, the defendant owned and maintained a bridge across the river. On this bridge the defendant had a gatehouse at which employees using the bridge for access to the plant customarily checked in on their way to work. To the north of a passway leading westerly from the west end of the bridge, the defendant owned a large tract of land which for many years had been used, at least in part, as a place for the dumping of cinders and other refuse from its plant. As the cinder dump was extended, the area became suitable for parking automobiles. It was then used for that purpose and was known as the parking lot. The defendant maintained it for the convenience of its employees. The officials of the defendant knew that it was the custom of employees to park their cars in the lot and had consented to it and acquiesced in it for about twenty-five years prior to December, 1952.

About 1943, the company, learning that nails and other sharp objects had worked up to the surface of the ground of the parking lot, to the injury of tires, had the entire surface paved. During World War II, a watchman employed by the defendant supervised the parking lot. About 1943, lights were installed by the defendant to illuminate the lot and

the adjacent area. For many years the defendant has maintained a roadway through the lot and passways in it, and had white lines painted from time to time to indicate the driveways which should be kept open and to point out the areas in which the cars of employees could be parked. When necessary, during the winter season, the defendant caused the snow to be plowed from the driveways within the parking lot.

The plaintiff, for many years, had been accustomed to drive to work in a fellow employee's car. After it was parked in the lot, he would walk to the bridge, check in for work and then proceed to the casting shop. For at least four years prior to December, 1952, he had customarily driven his own car to the lot and walked from there to his work in the casting shop. In December, 1952, and for many years prior thereto, between 250 and 300 cars of employees were parked daily in the lot. On December 4, 1952, the plaintiff drove his automobile to the parking lot, parked it there, walked ten or fifteen paces toward the gatehouse on the bridge to report for work, slipped and fell on a slippery patch of snow or ice and was injured.

The commissioner reached the following conclusions: The parking lot was maintained for the mutual benefit of the defendant and its employees, to provide a ready means of access to the plant and a ready means of parking the employees' automobiles in close proximity to the plant. The plaintiff entered upon the defendant's premises in accordance with the terms of his employment contract. The course of conduct pursued by the plaintiff on December 4, 1952, had been followed by him and many other employees for many years with the full knowledge, acquiescence, consent and encouragement of the defendant's representatives and for the mutual benefit

of the defendant and its employees. The injury sustained by the plaintiff arose out of and in the course of his employment.

The defendant contends that the plaintiff, in using the passways leading to the plant, and particularly in using the parking lot in which the accident occurred, was doing something for his sole individual benefit and that the defendant had no interest whatsoever in his activity.

Employment may exist before actual work begins or continue after actual work has ceased. *Johnson* v. *Wiese,* 125 Conn. 238, 239, 5 A.2d 19; *Carter* v. *Rowe,* 92 Conn. 82, 83, 101 A. 491. An employer may by his dealings with an employee or employees annex to the actual performance of the work, as an incident of the employment, the going to or departure from the work. To do this, it is not necessary that the employer authorize the use of a particular means or method, although that element, if present, is important. It is enough that the going to and from work across the employer's property can be reasonably held to be an incident to the employment within the contemplation of the parties because the employer knew that it was customary and acquiesced in it and because it was for his benefit in furthering the employment. *Katz* v. *Katz,* 137 Conn. 134, 138, 75 A.2d 57; *Taylor* v. *M. A. Gammino Construction Co.,* 127 Conn. 528, 530, 18 A.2d 400; *Procaccino* v. *E. Horton & Sons,* 95 Conn. 408, 411, 111 A. 594; *Merlino* v. *Connecticut Quarries Co.,* 93 Conn. 57, 59, 104 A. 396. Upon the facts found, it is clear that the accident resulting in the plaintiff's injury, which thus occurred in the course of his employment, was a natural and necessary incident or consequence of the employment, or of the conditions under which it was carried on, though not foreseen or expected.

The essential causal connection appears, therefore, to support the further conclusion that the accidental injury arose out of the employment. And where, as here, benefit to the employer was involved, this is so even though the particular act of the plaintiff was merely permitted rather than required. *Kelliher* v. *New Haven Clock Co.,* 121 Conn. 528, 533, 186 A. 559; see *Rogers's Case,* 318 Mass. 308, 61 N.E.2d 341.

In other assignments of error, the defendant claims that the court erred in failing to correct the finding and award. Upon an appeal to the Superior Court from a finding and award of a compensation commissioner the court cannot retry the facts. It inquires into the facts merely to determine whether the finding and the award appealed from are unauthorized in law, irregular or informal, or based upon a misconception of the law or the powers or duty of the administrative tribunal, or are so unreasonable as to justify judicial interference. The court cannot review conclusions of fact made by a commissioner which merely concern the weight of evidence and the credibility of witnesses. *Fiengo* v. *E. Vitale, Inc.,* 125 Conn. 559, 562, 7 A.2d 385. The court did not err in failing to correct the finding and award.

There is no error.

In this opinion the other judges concurred.