RICHARD A. McNAMARA v. TOWN OF HAMDEN ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued December 14, 1977—decision released April 25, 1978—
reargued October 3, 1978—substitute decision released
February 6, 1979

*F. Woodward Lewis,* with whom were *Ellen L. Sostman* and, on the brief, *Joseph M. Delaney,* for the appellant (plaintiff).

*Bruce W. Thompson,* for the appellee (defendant).

*Clifford Davis* filed a brief as amicus curiae.

SPEZIALE, J. This appeal presents a question under the Workmen's Compensation Act, General Statutes, chapter 568: whether an injury sustained while the plaintiff was engaged in a customary and permitted game of ping-pong on his employer's premises before the start of the work day, using equipment purchased by the employees, arose out of and in the course of his employment so that it was error to deny him compensation.

The compensation commissioner's finding and award discloses the following facts: On April 15, 1975, the plaintiff was employed by the public works department of the defendant town of Hamden. The work day was from 8 a.m. to 4:30 p.m. Some of the work force of about eighty employees were in the habit of assembling in the department's garage about a half hour before 8 a.m. They drank coffee, talked and generally passed the time until they went "on the clock" at 8 a.m. and received the day's assignments from their supervisors. A few months prior to April 15, about ten or twelve of the "early-birds" obtained permission from the "director or the assistant director" of the department to purchase a ping-pong table and accessories at their own expense and to install the table near their lockers located in a corner of the garage.

The playing space was about twenty-five feet by twenty-five feet. The employer limited the playing

time as follows: from about 7:30 a.m. to 8 a.m.; from noon to 12:30 p.m., which was lunch time; and from about 4 p.m., as the employees gathered towards the end of the work day, until 4:30 p.m., when they went "off the clock." Eventually about twenty of the department's eighty employees used the table. A superintendent sometimes played.

On April 15, 1975, at 7:55 a.m., the plaintiff tripped and fell while playing ping-pong, severely injuring his right ankle. As a consequence he lost time from work and incurred medical and hospital expenses for which he claimed workmen's compensation benefits.

From these subordinate facts the commissioner concluded that no benefit accrued to the employer from the employees' playing ping-pong; that the table was for the exclusive use and benefit of the players; and that, therefore, ping-pong was not an incident of the plaintiff's employment or connected with it in any manner so as to require the employer to pay compensation. The commissioner dismissed the plaintiff's claim and an appeal was taken to the Court of Common Pleas, where the trial court found that the plaintiff had failed to meet his burden of proof and dismissed the appeal. In denying compensation both the commissioner and the trial court seized upon the lack of benefit to the employer. The plaintiff has appealed to this court from the judgment rendered.

The issue before us is whether the commissioner properly concluded that the plaintiff's injury was one not "arising out of and in the course of his employment" within the meaning of General Statutes § 31-284, a provision of the Workmen's Compensation Act.

It is an axiom of workmen's compensation law that awards are determined by a two-part test. The employee has the burden of proving that the injury claimed arose out of the employment and occurred in the course of the employment. "There must be a conjunction of the two requirements, 'in the course of the employment' and 'out of the employment' to permit compensation. The former relates to the time, place and circumstance of the accident, while the latter refers to the origin and cause of the accident." *Stakonis* v. *United Advertising Corporation,* 110 Conn. 384, 389, 148 A. 334 (1929); *Dombach* v. *Olkon Corporation,* 163 Conn. 216, 221, 302 A.2d 270 (1972); *Farnham* v. *Labutis,* 147 Conn. 267, 269, 160 A.2d 120 (1960); *Triano* v. *United States Rubber Co.,* 144 Conn. 393, 396, 132 A.2d 570 (1957). While easily stated, this test has been confused over the years. "[I]ts formulation has been easier than its application." *Herbst* v. *Hat Corporation of America,* 130 Conn. 1, 5, 31 A.2d 329 (1943). This confusion has developed as a result of a half century of factual variations on the legal rule. We take this opportunity to reaffirm the basic analysis to be applied in workmen's compensation cases, and to set forth a new and expanded test for cases like the present one.

On the record before us, it appears that the parties, the commissioner, and the court have implicitly treated the injury sustained as one "arising out of" the employment, and their focus on this appeal has been on the "in the course of" employment aspect of the test. Thus, we will confine our discussion and review to that element in deciding this case.

In order to come within the course of the employment, an injury must occur (a) within the period

of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it. *Stakonis* v. *United Advertising Corporation,* supra, 389. In the present case the employee was not fulfilling an employment duty, and therefore the proper inquiry under part (c) of the test will be whether the activity, playing ping-pong, was incidental to his employment.

First, the plaintiff was clearly at a place he could reasonably be, on the premises just before he "clocked in." And he was, according to the definition developed in workmen's compensation law, within the period of employment, regardless of the fact that it was five minutes prior to the commencement of the official work day. The exact time is not significant, so long as the employee is on the premises reasonably close to the start or finish of the work day. *Mascika* v. *Connecticut Tool & Engineering Co.,* 109 Conn. 473, 480, 147 A. 11 (1929); see *Hughes* v. *American Brass Co.,* 141 Conn. 231, 234, 104 A.2d 896 (1954); *Johnson* v. *Wiese,* 125 Conn. 238, 239, 5 A.2d 19 (1939). Moreover, even when an employee is still in the process of coming to or going from work, once he or she is on the premises, whether arriving a little early, or leaving a little late, this court has found the employee to be within the period of the employment. Davis, "Workmen's Compensation in Connecticut—The Necessary Work Connection," 7 Conn. L. Rev. 199, 215–16 (1973–1974), and cases cited therein. Therefore, a distinction based on an activity's occurring five minutes before work, as opposed to at lunch or during the last half hour of the work day, would be unwarranted especially because both the early

gathering and the recreation involved here were together designated by the employer as permissible activities.

The crux of this case rests, therefore, on the proper application of the second portion of part (c) of the course of employment test: whether the injury sustained occurred when the employee was doing something "incidental to the employment." It is this inquiry that has been most subject to distortion from one type of case to another. The "going and coming" cases, in which the employee is injured traveling to or from work; *Taylor* v. *M.A. Gammino Construction Co.,* 127 Conn. 528, 532, 18 A.2d 400 (1941); and cases cited therein; "personal comfort" cases, in which the employee is attending to some personal need when injured; *Puffin* v. *General Electric Co.,* 132 Conn. 279, 43 A.2d 746 (1945); *Lovallo* v. *American Brass Co.,* 112 Conn. 635, 153 A. 783 (1931); and "horseplay" cases, in which an employee is injured while wrestling; *Shedlock* v. *Cudahy Packing Co.,* 134 Conn. 672, 60 A.2d 514 (1948); *Philippe* v. *Balco, Inc.,* 12 Conn. Comp. Dec. 35 (1942); have become special categories in the law. See Davis, "Workmen's Compensation," supra, discussing cases by category. In the process special tests have evolved for each factual variation.

For example, in the going and coming cases, it is necessary for the commissioner to find a benefit to the employer before compensation will be awarded. *McKiernan* v. *New Haven,* 151 Conn. 496, 499, 199 A.2d 695 (1964). As a result, in going and coming cases that have also involved recreational or social aspects, as when an employee is on the way to a union-sponsored picnic, the benefit test has been

applied. *Williams* v. *State,* 152 Conn. 692, 211 A.2d
700 (1965); see *Smith* v. *Seamless Rubber Co.,* 111
Conn. 365, 368–69, 150 A. 110 (1930). There is a
crucial difference between the going and coming
cases (whether or not they also involve the element
of recreation) and other types, because in the going
and coming cases the injury has not occurred on the
premises of the employer. See *True* v. *Longchamps,
Inc.,* 171 Conn. 476, 478–79, 370 A.2d 1018 (1976);
*Dombach* v. *Olkon Corporation,* 163 Conn. 216, 222,
302 A.2d 270 (1972). Therefore, the need arose to
reach out for the additional element of employer
benefit to make up for the fact that employees going
to or coming from work do not satisfy both of the
first two course-of-employment requirements, place
and period of employment. "[I]f the recreational
activity takes place on some distant vacant lot,
several hours after the day's work has ceased, some
independently convincing association with the
employment must be built up to overcome the initial
presumption of disassociation with the employment
established by the time and place factors." 1A Lar-
son, Workmen's Compensation Law § 22.11, p. 5-72
(1978).

When an employee is *on the premises* and is
*within the period of employment,* however, it should
not be necessary to satisfy the additional test of
employer benefit. Rather, the basic test should be
remembered and applied: Is this activity incidental
to the employment? The meaning of the term "inci-
dental" need not be defined as compulsion by or
benefit to the employer in all cases. For example,
other activities such as those typical of the personal
comfort and horseplay cases fulfill the requirements
of place and time, without being of benefit to the
employer; and yet compensation may be awarded

in such instances, because the injury had occurred on the premises as the result of a customary activity sanctioned by the employer through approval or acquiescence. *Puffin* v. *General Electric Co.*, supra; *Lovallo* v. *American Brass Co.*, supra; *Shedlock* v. *Cudahy Packing Co.*, supra; Davis, "Workmen's Compensation," supra, 204–207. It would be anomalous indeed for courts to assert that smoking is an ordinary personal need whereas exercise is not, or that shoving, tripping or punching a fellow employee is inevitable horseplay, simply indulging a natural human tendency, whereas engaging in a planned recreational activity like ping-pong is not. How can one realistically evaluate the actual benefit an employer receives from permitting on-premises recreational activities? The obvious difficulty in drawing such distinctions or weighing such intangibles is sufficient reason to adopt a new rule which will avoid arbitrary and unjust results.

This case clearly illustrates the need for a consistent approach to the question of whether certain types of injuries are work related. Experts in the field of workmen's compensation law have pointed out the inconsistency of using the employer benefit test in situations such as recreation, personal comfort, and horseplay cases where an employer-sanctioned activity regularly[1] occurs on the prem-

---

[1] Activities that occur only seldom or once logically require more proof of employment connection, such as employer benefit. For example, in *Smith* v. *Seamless Rubber Co.*, 111 Conn. 365, 150 A. 110 (1930), the employee became ill as the result of submitting to a vaccination offered by the board of health as part of a voluntary program allowed on the premises. The employee was denied coverage because there was no finding of mutual benefit; only the employees could be said to benefit as a class from the program. The vaccination program, however, was not a regular or customary activity, and therefore, as in the going and coming cases, the extra element of benefit may be called into play.

ises. Both Professor Larson and Professor Davis advocate a test of employer acquiescence or approval in such cases, whether they be recreation, personal comfort, or horseplay situations. "[I]t should not be necessary [in such cases] to bolster the case by adding proof of employer sponsorship of the activity or employer benefit therefrom. It is generally held sufficient that the activity is an accepted and normal one, since it thereby becomes a regular incident and condition of the employment." 1A Larson, op. cit. § 22.11, p. 5-72. Professor Davis, likewise, in his amicus curiae brief, urges the court to move beyond a mere employer benefit test to one including employer approval, to "aid the decision of future cases." See also Davis, "The Effect of Employer Approval on Workmen's Compensation Decisions — Letting Affected Parties Communicate Standards," 54 Cornell L. Rev. 97, 111 (1968).

The ping-pong game was found by the commissioner not to be of benefit to the employer, a finding we cannot and need not disturb. *True* v. *Longchamps, Inc.,* 171 Conn. 476, 478, 370 A.2d 1018 (1976); *Glenn* v. *Stop & Shop, Inc.,* 168 Conn. 413, 416, 362 A.2d 512 (1975); *Wheat* v. *Red Star Express Lines,* 156 Conn. 245, 248–49, 240 A.2d 859 (1968). The commissioner did, however, find employer permission and regularity of activity. The employer sanctioned the games by regulating the permitted playing times, by allowing the equipment on the premises, and by setting aside actual work hours in the afternoon for the activity. The games occurred regularly on the premises of the employer. Those facts constitute a sufficient basis on which to conclude that the games were an incident of the employment under the test we now adopt.

In conclusion, we restate the rule to be applied in workmen's compensation cases generally: In order to be compensable, an injury must (1) arise out of the employment; and (2) occur in the course of the employment. To occur in the course of the employment, the injury must take place (a) within the period of the employment, (b) at a place where the employee may reasonably be, and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it.

We now go a step further and hold that when determining whether the activity is incidental to the employment, the following rule should be applied: If the activity is regularly engaged in on the employer's premises within the period of the employment, with the employer's approval or acquiescence, an injury occurring under those conditions shall be found to be compensable.

There is error, the judgment is set aside and the case is remanded to the Superior Court with direction to sustain the appeal and to remand the cause to the workmen's compensation commissioner to render an award in favor of the plaintiff.

In this opinion COTTER, C. J., LOISELLE and BOGDANSKI, Js., concurred.

LONGO, J. (dissenting). The opinion announced by the majority today correctly focuses on the general issue before us: whether the commissioner properly concluded that the plaintiff's injury was one not "arising out of and in the course of his employment" within the meaning of the Workmen's Compensation Act. In holding that the commissioner erred in reaching this conclusion, the majority has formulated a "new and expanded test for

cases like the present one." I believe the "new and expanded test" which the majority has adopted in defining "incidental to employment" is an overly broad one, will be difficult to apply either uniformly or realistically and is not warranted by the record in the present case. For those and the following reasons, I am thus compelled to dissent.

As the majority points out, the crucial question is whether the plaintiff was doing something "incidental to his employment" when the accident happened, since the plaintiff concedes, as he must, that he was not injured in the performance of his duties. In considering whether an activity is incidental to employment, we said in *Smith* v. *Seamless Rubber Co.*, 111 Conn. 365, 368–69, 150 A. 110 (1930): "Where an employer merely permits an employee to perform a particular act, without direction or compulsion of any kind, the purpose and nature· of the act becomes of great, often controlling significance in determining whether an injury suffered while performing it is compensable. If the act is one for the benefit of the employer or for the mutual benefit of both, an injury arising out of it will usually be compensable; on the other hand, if the act being performed is for the exclusive benefit of the employee so that it is a personal privilege or is one which the employer permits the employee to undertake for the benefit of some other person or for some cause apart from his own interests, an injury arising out of it will not be compensable." The commissioner was correct in determining as a matter of fact that no benefit accrued to the employer from the ping-pong playing. The commissioner found, and the plaintiff does not contest, that playing ping-pong had no effect on work habits or work regulations. Especially in light of those find-

ings, the fact that a superintendent played from time to time and that emergency work assignments were occasionally handed out to the "earlybirds" do not compel a conclusion that the employer materially benefited. See *Williams* v. *State,* 152 Conn. 692, 694, 211 A.2d 700 (1965); *Mulligan* v. *Oakes,* 128 Conn. 488, 492, 23 A.2d 870 (1942). The commissioner's conclusion was not so unreasonable or illogical as to justify judicial interference. *Rivera* v. *Guida's Dairy,* 167 Conn. 524, 525, 356 A.2d 184 (1975); *Labbe* v. *American Brass Co.,* 132 Conn. 606, 609, 46 A.2d 339 (1946).

The fundamental issue in any case of this nature is whether there is a sufficient connection between the employment and the recreational activity for the activity to be regarded as an incident of the employment. In searching for a work relation, compensation commissioners and courts in this and other states have paid increasing attention to two related factors in addition to benefit to the employer. The first of these is the extent of employer involvement in the activity; the second is the extent to which the activity in question is customarily engaged in by the employee. See Davis, "Workmen's Compensation in Connecticut — The Necessary Work Connection," 7 Conn. L. Rev. 199, 212–13 (1973–1974); 1A Larson, Workmen's Compensation Law §§ 22.20—22.24 (1978). I do not believe, however, that either of these factors are present sufficiently in this case to establish a connection between the employment and the ping-pong playing which could make that activity "incidental to the employment."

The spectrum of employer involvement in employees' recreational and social activities can range from compulsion, to sponsorship and encourage-

ment, to mere permission or toleration. This is not a case, however, where an employer expressly or impliedly required a certain activity as part of the job, bringing that activity within the course of employment. See *Stakonis* v. *United Advertising Corporation,* 110 Conn. 384, 148 A. 334 (1929) (an employee *ordered* by his foreman to attend an annual company picnic or lose a day's pay was awarded compensation when injured on the way to the event). In factual situations less extreme the problem becomes more difficult and commissioners and courts must very closely examine the degree and form of employer involvement to determine whether the employer has recognized or should recognize a work connection. Employer involvement was found to be minimal in the present case. Management gave a few of the men permission to install and use a ping-pong table in a corner of the garage at their own expense, and prescribed off-work periods for play. A superintendent occasionally joined in the game. The employer did nothing further to regulate or encourage play, financially or otherwise. This is a far cry from the "company team" cases in which compensation has been awarded for injuries sustained in league baseball games on the basis of substantial employer involvement as manifested by acts of encouragement or financial subsidy. See the cases reviewed in 1A Larson, supra § 22.24. The commissioner's memorandum of opinion indicates that he took the employer's limited role in the recreational enterprise into account in concluding that ping-pong playing was not incidental to the plaintiff's job.

Neither can I agree that the customary nature of the recreational activity on the employer's premises prior to and during the work day should be

the linchpin of compensability. Although custom is an important consideration in a recreational injury case and in other types of cases, we have recognized the significance of whether a particular activity on the premises is a habit among the employees; see *Mann* v. *Glastonbury Knitting Co.,* 90 Conn. 116, 96 A. 368 (1916); there appears to be no good reason in law or logic to adopt a rule to the effect that the customary nature of a recreational activity on an employer's premises establishes a sufficient work connection as a matter of law, even where employer involvement and benefit are de minimis. Each case of this nature has its own set of circumstances and each requires its own solution.

Numerous on-the-premises recreational injury cases are reviewed in 1A Larson, supra § 22.10; with the possible exceptions of *Nichols* v. *Workmen's Compensation Appeals Board,* 269 Cal. App. 2d 598, 75 Cal. Rptr. 226 (1969); *Mack Trucks, Inc.* v. *Miller,* 23 Md. App. 271, 326 A.2d 186 (1974); and *City of Oklahoma City* v. *Alvarado,* 507 P.2d 535 (Okla. 1973), in no case was the mere customary nature of the activity found sufficient, without more, to justify awarding compensation. See *Winter* v. *Industrial Accident Commission,* 129 Cal. App. 2d 174, 276 P.2d 689 (1954) (caddy injured on day off while playing golf on employer's course); *Conklin* v. *Kansas City Public Service Co.,* 226 Mo. App. 309, 41 S.W.2d 608 (1931) (baseball encouraged by employer); *Geary* v. *Anaconda Copper Mining Co.,* 120 Mont. 485, 188 P.2d 185 (1947) (handball injury; employees on call during lunch hour); *Uzendoski* v. *City of Fullerton,* 177 Neb. 779, 131 N.W.2d 193 (1964) (lifeguard injured diving into employer's pool while on duty); *Tocci* v. *Tessler & Weiss, Inc.,* 28 N.J. 582, 147 A.2d 783 (1959) (employer supplied

softball equipment); *Brown* v. *United Services for Air, Inc.*, 298 N.Y. 901, 84 N.E.2d 810 (1949) (volleyball encouraged by employer); *Dowen* v. *Saratoga Springs Commission*, 267 App. Div. 928, 46 N.Y.S.2d 822 (1944) (employee injured using swimming pool maintained for employer's resort business); *Henry* v. *Lit Bros.*, 193 Pa. Super. 543, 165 A.2d 406 (1960) (touch football injury; employees encouraged to devote lunch period to activities on employer's premises); *Kingsport Silk Mills* v. *Cox*, 161 Tenn. 470, 33 S.W.2d 90 (1930) (basketball encouraged by employer); *Salt Lake City* v. *Industrial Commission*, 104 Utah 436, 140 P.2d 644 (1943) (fireman required to take exercise while on 24-hour duty and encouraged to play handball).

Moreover, I am not convinced, as the majority seems to be, that the "custom" test is but a logical extension of the rationale supporting compensation in the "personal comfort" and "horseplay" cases. While analogous, those cases are not controlling. In the personal comfort cases we have held that employee attention to personal needs during the work day is incidental to employment. See *Puffin* v. *General Electric Co.*, 132 Conn. 279, 43 A.2d 746 (1945), and *Lovallo* v. *American Brass Co.*, 112 Conn. 635, 153 A. 783 (1931) (employees compensated for injuries received while taking a permitted smoking break). The rationale for the rule is that routine acts of comfort and convenience, such as taking a drink of water, are reasonably necessary for the health and comfort of an employee, are indirectly conducive to the purpose of the employment, and generally do not interrupt the course of employment. *Lovallo* v. *American Brass Co.*, supra, 639; see Davis, "Workmen's Compensation," supra.

Playing ping-pong is simply not in the same category of ordinary personal needs, such as washing one's hands, taking a smoking break, or eating lunch.

In the horseplay cases, we have said that employees may be entitled to compensation for injuries sustained in a customary form of horseplay during working hours that was tolerated by the employer. *Shedlock* v. *Cudahy Packing Co.*, 134 Conn. 672, 676–77, 60 A.2d 514 (1948); *Stulginski* v. *Waterbury Rolling Mills Co.*, 124 Conn. 355, 360–61, 199 A. 653 (1938). As explained by Cardozo, J., in the leading case of *Leonbruno* v. *Champlain Silk Mills*, 229 N.Y. 470, 472, 128 N.E. 711 (1920), the underlying principle is that it is a natural human tendency to indulge in occasional skylarking with one's fellow workers. The risks of such physical associations and conditions are risks of the employment. I do not consider playing ping-pong to be in the same category of inevitable horseplay as a shove, a trip, or a punch on the arm.

The majority is of the view that it is anomalous that employee injuries in the personal comfort and horseplay cases may be the subject of compensation, but not the same injuries arising from the planned recreational activities of the employee, and concludes that "[t]he obvious difficulty in drawing such distinctions or weighing such intangibles [employer benefits] is sufficient reason to adopt a new rule which will avoid arbitrary and unjust results." I cannot agree that the denial of compensation in this case is arbitrary and unjust. The commissioner's finding and memorandum of opinion indicate that he found the lack of employer benefit and involvement fatal to the plaintiff's claim, notwithstanding the customary nature of ping-pong playing

on the premises. I adhere to my original view that this is not a case that lies so clearly on the other side of the line that we can say he was wrong. See *Woodley* v. *Rossi,* 152 Conn. 1, 6, 202 A.2d 136 (1964); *Herbst* v. *Hat Corporation of America,* 130 Conn. 1, 7, 31 A.2d 329 (1943).

I would find no error.