[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS (#102)
The plaintiff, Sandra Sullivan, brings this action against her former employer, defendant Griffin Health Services Corporation.
The following, facts are alleged in the plaintiff's three count complaint. The plaintiff was employed by the defendant from 1980 through March 1989. In December of 1988, the plaintiff and a fellow employee, Geraldine Toler, complained to their supervisor, Louise Hebert, about the lack of work ethic of a third employee. When the plaintiff and Ms. Toler did not receive a response from the supervisor, they complained to Hebert's supervisor about Hebert's unwillingness to act on their complaint. On January 10, 1989, the plaintiff had a meeting with Hebert at Hebert's request. Hebert informed the plaintiff that the plaintiff was on three months probation. The plaintiff then filed a grievance with the personnel director in regard to Hebert's actions. The plaintiff was acting pursuant to the Hospital Grievance Procedure. Thereafter the plaintiff was terminated.
The first count of the complaint alleges a breach of implied contract. The second count alleges negligent infliction of emotional harm. The last count alleges negligent misrepresentation.
"The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter. . . ." Connecticut Practice Book section 143.
In short, the defendant's arguments, as set forth in its extensive but thorough memoranda, state that the claims put forth by the plaintiff fall squarely within the purview of the National Labor Relations Board (NLRB), pursuant to 29 U.S.C. § 151 et seq., and therefore, this state court lacks subject matter jurisdiction.
The plaintiff argues that her situation comes under CT Page 1705 the exceptions to the NLRB's jurisdiction, as set forth in the case law.
 "Our cases have announced two doctrines for determining whether state regulations or causes of action are pre-empted by the NLRB. Under the first, set out in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), state regulations and causes of action are presumptively pre-empted if they concern conduct that is actually or arguably either prohibited or protected by the Act. Id. at 245. The state regulation or cause of action may, however, be sustained if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility. Id., at 243-244; Sears Roebuck Co. v. Carpenters, 436 U.S. 180, 200
(1978); Farmers v. Carpenters, 430 U.S. 290, 296-297 (1977). In such cases, the State's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the National Labor Relations Board's ability to adjudicate controversies committed to it by the Act, Farmers v. Carpenters, supra, at 297; Sears Roebuck Co. v. Carpenters, 436 U.S. at 200, and the risk that the state will sanction conduct that the Act protects. Id., at 205. The second pre-emption doctrine set out in Machinists v. Wisconsin Employment Relations Comm., 127 U.S. 132 (1976), prescribes state regulation and state law causes of action concerning conduct that Congress intended to be unregulated, id. at 140, conduct that was to remain a part of the self-help remedies left to the combatants in labor; disputes, id. at 147-148."
Belknap, Inc. v. Hale, 463 U.S. 491, 498-499 (1982).
"Exceptions to this rule (the pre-emption rule as set forth in Garmon) are: (1) those activities which are of merely peripheral concern of the Labor Management Relations Act; and (2) instances, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order." Sullivan v. Day Publishing Company, 239 F. Sup. 677, 678 (d. Conn., 1965). CT Page 1706
 "Where . . . the conduct at issue under state law is arguably prohibited by the NLRB, the Court has refined the analytical framework: `[t]he critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to or different from that which could have been, but was not presented to the labor Board. For it is only the former situation that a state court' s exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the Garmon doctrine was designed to avoid.' Sears, 436 U.S. at 197-98.
 In weighing the local interest against the risk of interference, Sears considered the possible similarity between the `controversies' that would be decided by the NLRB and state tribunals. The determination of potential interference required a more searching comparison than merely the factual bases of each controversy. The broader inquiry into the controversies would involve an examination of the interests protected by an relief requested for each claim."
Winfield v. Groen Division, Dover Corporation, 890 F.2d 764,767-68 (5th Cir., 1989) (citations omitted).
"These exceptions in no way undermine the vitality of the pre-emption rule. To the contrary, they highlight our responsibility in a case of this kind to determine the scope of the general rule by examining the state interests in regulating the conduct in question and the potential for interference with the federal regulatory scheme." Farmer v. Carpenters, 430 U.S. 290, 297 (1976).
The basis for determining whether the behavior in question is of "peripheral concern to the federal law" or whether the "controversies" to be decided by the NLRB would be the same as if decided by a state court is whether the root of the action is founded in a labor dispute or whether the behavior is an outgrowth of an employment problem. If the former holds, then the NLRB has exclusive jurisdiction. "Simply stated, it is essential that the CT Page 1707 state tort be either unrelated to employment discrimination or a function of the particularly abusive, manner in which the discrimination is accomplished or threatened rather than a function of the action or threatened discrimination itself." Farmer, 430 U.S. at 305. In Linn v. Plant Guard Workers, 383 U.S. 53 (1965), the plaintiff was defamed during a campaign to organize the employees. The court stated that "labor and management often speak bluntly and recklessly, embellishing their respective positions with imprecatory language." However, the court went on to hold that when such language becomes abusive and is said maliciously, then the state court has an interest in protecting its citizens and an exception to pre-emption would apply. Id. Linn is a good example of an action that does not have its roots in an employment dispute but that is a spin-off of such a dispute. An example of a labor dispute that would give the NLRB exclusive jurisdiction is San Diego Unions v. Garmon, 359 U.S. 236 (1958). In Garmon, the dispute arose because the union wanted to picket outside of the employer's business when the employer was against it.
The acts of the defendant as alleged in the complaint, which must be viewed in a light most favorable to the plaintiff, Duguay v. Hopkins, 191 Conn. 222, 227 (1983), gives the appearance that the defendant's actions were done with malice and out of vengeance and were not motivated by any employment based reason. The interference by the State with the NLRB's authority to handle labor disputes is outweighed by the State's interest in protecting its citizens from behavior of this kind. The acts of the defendant fall within the exceptions to the pre-emption doctrine. The motion to dismiss on these grounds is denied.
The defendant also argues that the Connecticut Worker's Compensation Act bars the plaintiff's claim for negligent infliction of emotional distress. The law is split on this issue. On the one side is Ellis v. Pray Automobile Corp., 16 CLT 11, 26 (D.Conn., Feb. 14, 1990) and DiNicola v. Bayer Cadillac, 12 CLT 8, 17 (Flynn, J., September 30, 1985), which say that the Worker's Compensation Act does bar a claim for negligent infliction of emotional distress. On the other side, Mosley v. Housing Authority,2 CSCR 3 (November 14, 1988, McDonald, J.), which states that the Worker's Compensation Act only covers injuries that occurred during the employer-employee relationship. The court held that emotional distress occurs after the relationship has terminated.
"The employee has the burden of proving that the CT Page 1708 injury claimed arose out of the employment and occurred in the course of the employment." McNamara v. Hamden,176 Conn. 547, 550 (1979). "In order to come within the coarse of the employment, an injury must occur (a) within the period of the employment, (b) at a place the employee may reasonably be, and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it." McNamara, 176 Conn. at 551. The injury caused by negligent infliction of emotional distress does not arise until after the employment has terminated, logically because the emotional distress is caused by the termination itself. Part (a) of the Worker's Compensation test is not fulfilled here and, therefore, the plaintiff's claim is not barred by the Worker's Compensation Act. The motion to dismiss fails on this ground.
The defendant's motion to dismiss is denied.
FRANK S. MEADOW, J.