[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM ON DEFENDANT'S MOTION TO STRIKE
The plaintiff was discharged from her job with the defendant and has filed a complaint in five counts. The defendant has filed a motion to strike against the first four CT Page 472 counts, (1) false imprisonment, (2) violation of § 53a-119 of the General Statutes, (3) intentional infliction of emotional distress and (4) wrongful termination based on a violation of public policy. The plaintiff makes various factual allegations in the complaint and the court will adopt the rendition of those facts as set forth in the statement of facts in the memorandum opposing the motion to strike: the plaintiff alleges that on April 17, 1992, while she was working at Ames, she was ordered to the store office by the assistant store manager. Complaint, #4. Once inside the office, Greenleaf was confronted by the assistant store manager, her departmental supervisor, and Mr. Langin, allegedly a member of Ames' Loss Prevention Department, who accused her of stealing lace and other store merchandise. Complaint, ##5-6.
Greenleaf was interrogated by Mr. Langin and another alleged Ames' Loss Prevention Department employee for over three hours. Complaint, #18. During this three hour interrogation Greenleaf, despite her requests, was not permitted to leave the office, never given the opportunity to use the restroom or make a phone call and never given water. Complaint, #14. On several occasions during the interrogation, Greenleaf began to cry. Complaint, #12. After three hours of being interrogated, Greenleaf was forced to sign a "Voluntary Statement" that stated: "I took stuff from cigarettes to candy bars to nuts." Complaint, ##18-19. The "Voluntary Statement" further states that Greenleaf took items totaling $1,820.60. Complaint #21.
After Greenleaf signed the "Voluntary Statement," Mr. Langin permitted her to call her mother and then called the East Hartford Police allegedly to verify that Greenleaf had signed the "Voluntary Statement." Complaint, #23. At 9:50 p. m., Greenleaf was informed that she was not under arrest and could leave. This was the first time since the beginning of the interrogation at 6:05 p. m that Greenleaf was informed that she could leave. Complaint, #24. The store manager then informed Greenleaf of her termination. Complaint, #25.
Throughout the entire interrogation, Greenleaf was made to believe that if she did not sign the "Voluntary Statement," Ames would have her arrested and sent to jail. Complaint, #27. CT Page 473
It should also be noted that in each of the counts the plaintiff alleges to have "suffered damages, including but not limited to extreme emotional distress, mental anguish, lost wages, loss of earning capacity and damage to her reputation in the community."
The defendant seeks to strike the first three counts on the grounds that the claims alleged in those counts fall within the exclusive remedy provision of the Connecticut Worker's Compensation Act, § 31-275 et seq. The defendant moves to strike the fourth count on the grounds that it fails to state a claim upon which relief may be granted.
The facts alleged in the complaint are to be construed in the most favorable way for the plaintiff when a motion to strike is aimed at the complaint. Amodeo v. Cunningham,180 Conn. 80 (1980) and this includes the drawing of all reasonable inferences from those facts. As the plaintiff notes, where an employer claims it has no liability under the act the burden of proof as to the act's applicability is on the employer, Johnson v. Robertson Bleachery Dye Works,136 Conn. 680, 704 (1950), and the trier of fact must resolve factual disputes as to whether the injury complained of arose out of and in the course of employment. Pagani v. BT IILimited Partnership, 24 Conn. App. 739, 745 (1991).
Nothing in these last mentioned cases relieves the plaintiff from alleging sufficient and appropriate facts to withstand a motion to strike and since as noted all facts and inferences are taken in the plaintiff's failure, there are in a sense no "facts" in actual dispute between the parties. This is not a negligence claim where the trier of facts, usually a jury, is said to have a necessary role in formulating community standards of care. In any event, courts have not been reluctant in granting motions to strike or dismiss against employee claims where the complaint was held not to state the necessary allegations to bring a claim under the act, Jett v. Dunlap, 179 Conn. 215, 216, 219 (1979), cf.Meerbrey v. Marshall Field Co., 564 N.E.2d 1222, 1224 (Ill., 1990), Fermino v. Fedco, Inc., 18 Cal Reptr.2d 719, 720, 721 (1993).
I. CT Page 474
Given the allegations of the complaint, as to the first three counts, (1) false imprisonment, (2) violation of § 53a-119, and (3) intentional infliction of emotional distress, three questions are presented:
(1) Are the damages and injuries claimed to have been suffered compensable under the act?
(2) Were the injuries sustained in the course of the plaintiff's employment?
(3) Was the conduct alleged "intentional" and can it be ascribed to the employer so that it can be said not to rise out of the employment?
(1)
Section 31-284 says that an employer shall not be liable for "damages on account of personal injury" sustained by an employee arising out of and in the course of the employment. The defendant alleges the injuries and damages claimed are compensable under the act.
Some courts take an expansive view of the concept of personal injury and for example hold that the emotional distress caused by false imprisonment is compensable under the Worker's Compensation Act. Meerberry v. Marshall Field Co.,
564 N.E.2d at page 1228, Pathfinder Co. v. Industrial Comm'n.,343 N.E.2d 913 (Ill. 1976), Collier v. Wagner Castings Co.,408 N.E.2d 198 (1980).
Other courts seems to adopt the reasoning set forth in 2A Larson, Workmen's (sic) Compensation Law § 68.34(a) pp. 13-62, 13-63.
 "If the essence of the tort, in law, is nonphysical, and if the injuries are of the usual non-physical sort with physical injury being at most added to the list of injuries as a make weight, the suit should not be barred. But if the essence of the action is recovery for physical injury or death, the action should be barred even if it can be cast in the form of a normally non-physical tort." CT Page 475
See Moore v. Federal Department Stores, Inc., 190 N.W.2d 262
(Mich. 1971), Redican v. KMart Corp. 734 S.W.2d 804, 809 (Mo., 1987), Iverson v. Atlas Pacific Engineering, 143 Cal.App.3d 219
(1983), cf. Fernino v. Fedco, 18 Cal. Rep.2d 719, 722 (1993).
No Connecticut appellate decisions seem to have directly faced the issue. In Wilder v. Russell Library Co.,107 Conn. 56 (1927) job related stress was claimed to have caused a physical and mental breakdown which resulted in the employee's suicide and this was held compensable under the act. But death did result which is compensable under the act if it results from employment. Here non-physical injuries are being claimed. The court feels constrained not to deal with this issue because a Supreme Court case did appear to hold the act covered situations where non-physical injuries were alleged.Jett v. Dunlap, 179 Conn. 215, 216 (1979), also see R. HowardSmith, et al v. Town of Union Zoning Commission, 1 CSCR 444,445 (1980), cf. Baker v. Cigna Corp., 4 CSCR 630 (1989). Also the plaintiff did not address this issue in her memorandum.
2.
The next question that must be addressed is whether the injuries claimed were sustained in the course of the plaintiff's employment and did they arise out of that employment?
The plaintiff argues the injuries here did not arise out of and in the course of her employment. She was not on her shift and physically at her place of employment when the conduct and injuries occurred which form the basis of this action. Her duties did not include being forced to sit in a room for questioning or being forced to sign a statement admitting wrongdoing. The treatment she received was not activity regularly engaged in on the worksite and had nothing to do with her duties as a store clerk.
In her memorandum, the plaintiff also cites Fulco vs.Norwich Roman Catholic Diocesan Corp., 27 Conn. App. 800, 808
(1992) for the proposition that where the injury or distress arises out of the discharge and not the conditions of employment, the act does not bar a claim. But the fact of termination is only referred to in passing in this complaint (par. 26) and it is clear that the first three counts of the CT Page 476 complaint rely on the plaintiff's treatment prior to her discharge to base their claims.
McNamara v. Hamden, 176 Conn. 547, 556 (1979) sets forth the test:
 "In order to be compensable an injury must (1) arise out of the employment; and (2) occur in the course of employment. To occur in the course of the employment the injury must take place (a) within the period of employment (b) at a place where the employee may reasonably be and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it."
The court went on to say in determining whether the activity is incidental to the employment, the rule should be whether "the activity is regularly engaged in on the employer's premises within the period of employment, with the employer's approval or acquiescence." id. p. 556.
The plaintiff was questioned by security personnel on allegations that she was an employee and while so engaged she stole from the defendant merchandise offered for sale. The complaint alleges that her departmental supervisor and a security person told the plaintiff that her activities were brought to their attention by a "hot line" system set up by the employer so that employees could give anonymous accusations as to follow workers.
It would seem that the injury alleged to have been suffered by the plaintiff by the conduct she alleges was violative of her rights arose out of her employment. She was accused of stealing from various departments she worked in over a twelve year period and security claims to have been alerted to her activities by a "hot line" system set up for the use of employees in communicating tips or accusations to management. As to whether what happened occurred in the "course of employment" — it certainly seems to have occurred in her period of the employment. She was "ordered to the store office" (par. 4) "while working her regular shift." The activity and questioning took place at store facilities. An employee who submits to questioning by security personnel during her work shift would seem to be "reasonably fulfilling the duties of the employment." 176 Conn. at page 556. CT Page 477
That the security apparatus and personnel engaged in outrageous and perhaps unlawful behavior does not mean the injury is not compensable. There is no allegation in the complaint for example that the employer directed its security or supervisory personnel to behave in the way they did, see discussion in Hatcher v. Bullard Co., 39 Conn. Sup. 250, 252-255
(1984).
Conduct similar to that alleged here was held to be compensable under the California Worker's Compensation Law,Fernino v. Fedco., Inc., 18 Cal.Rptr.2d 719, 721 (1993). The case of Shelton v. W. T. Grant Co., 331 F.2d 593, 594, 595
(CA 5, 1964) reaches a different result on the reasoning that if a casual visitor had been at the store and charged with what the plaintiff employee was accused of doing, there is nothing to show that the defendant would not have subjected the casual visitor to the same unlawful detention as the employee plaintiff. This merely offers a conclusion in the guise of a reason. The point is the employee is not a casual visitor, he or she by the allegations of this complaint would presumably know of the existence of the "hot line" security system, and the alleged thefts occurred while she was an employee.
Cases have permitted suits for false imprisonment outside the act but they have been cases where the employer has engaged in "intentional" activity in unlawfully detaining the plaintiff, Schutt v. Lado, 360 N.W.2d 214, 215, 216 (Mo. 1984),Iverson v. Atlas Pacific Engineering, 191 Cal. Rpt. 696, 699 (1983), Smith v. Rich's, Inc., 123 S.E.2d 316, 318 (Ga., 1961),Morris v. United Parcel Service, 521 N.Y.S.2d 591, 592 (1987). If anything, these cases support the notion that activity such as that alleged here occurred in the course of and arose out of the employment in the view of these jurisdictions since these cases hold that the employer could not rely on the protection of the act at least at the pleading stage due to its alleged "intentional" actions. If the activity qua activity was outside the act, why bother to discuss the legal bearing of the intentional activity of the employer before allowing a remedy outside the act.
3.
This plaintiff specifically alleges that named job CT Page 478 supervisors and security personnel engaged in unlawful conduct which caused her the injuries which form the basis of the claims she makes in the first three counts of this suit.
Jett v. Dunlop, 179 Conn. 215 (1979) defined a narrow exception to the exclusivity of the act. if [If] a fellow employee commits an intentional tort and that employee can be identified as an "alter ego" of the employer, then the employee can bring an action and her remedies are thus not confined to the act. As pointed out in Mingachos v. CBS, Inc.,196 Conn. 91, 99 (1985) in Jett the assault was perpetrated by a work supervisor of the plaintiff employee and this did not suffice to permit a common law cause of action. The pleadings here do not allege that the employer directed or authorized the complained of activity here or that the responsible fellow employees were of such a status in the defendant's organization as to be characterized as the alter ego of the corporation, Jett v. Dunlap, 179 Conn. at pp. 219-220.
The "intentional" activity alleged here is not of such a nature and not so pleaded as to provide for a cause of action outside the act against the employer defendant.
4.
The fourth count alleges that the defendant and its employees restrained the plaintiff thereby intending to intimidate her or coerce her into admitting a theft so that they could terminate her (par. 31). The next paragraph alleges that such conduct was in violation of our state's "public policy against depriving individuals of their right to physical liberty and in violation of Connecticut General Statutes § 53a-119a."
(a)
In Sheet v. Teddy's Frosted Foods, Inc., 179 Conn. 471
(1980) our court allowed a discharged employee in an employment at will job to bring an action for wrongful discharge where the employee was fired in contravention of public policy. The Sheets court specifically said: We need not decide whether violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge violates public policy," 176 Conn. at page 480. CT Page 479
In upholding a trial court's action a motion to strike inMorris v. Hartford Courant Co., 200 Conn. 676, 680 (1986) the court noted that the plaintiff did not allege an employee's firing violated any specific statutory or constitutional provision or judicially conceived notion of public policy. The court went on to say that it elected not to further define the public policy concept[.] But where an employee merely accuses his employer of negligently making an accusation of criminal conduct because it failed to investigate charges reasonably and adequately, it would not be held to be a violation of public policy so as to permit a suit for wrongful discharge.
The court left open how it would decide a case where "the false accusation was knowingly or recklessly made," even though no statutory or constitutional violation was alleged.
That is not exactly what is involved here, however. There is no allegation that the theft charges were false and were intentionally made or recklessly made without adequate investigation. The allegation here is that the defendant through its agents engaged in improper conduct while the plaintiff was still an employee to provide a reason to terminate her. The court does not know whether such a claim should provide a public policy basis for a wrongful discharge claim. The plaintiff asks this court to extend Sheets and take up the speculation in Morris without providing any reason why it should do so. Certainly, a party should have the right to assert a hitherto unrecognized cause of action or expand one already discretely limited by prior appellate authorities but before it asks a trial court to disregard a motion to strike based on the present state of the law it should provide some reason for the court to accept the new theory.
(b)
As to the wrongful discharge action insofar as it is based based on a purported violation of state statute, here specifically § 53a-119a, one has to look at the public policy actually expressed in the statute before a wrongful discharge claim can be based on the statute. The wrongful discharge action is permitted because it is considered necessary to enforce a public policy expressed in a statute.
The relevant portion of the statute reads as follows: CT Page 480
 (a) Any owner, authorized agent or authorized employee of a retail mercantile establishment, who observes any person concealing or attempting to conceal goods displayed for sale therein, or the ownership of such goods, or transporting such goods from such premises without payment therefor, may question such person as to his name and address and, if such owner, agent or employee has reasonable grounds to believe that the person so questioned was then attempting to commit or was committing larceny of such goods on the premises of such establishment, may detail such person for a time sufficient to summon a police officer to the premises. Any person so questioned by such owner, authorized agent or authorized employee pursuant to the provisions of this section shall promptly identify himself by name and address. No other information shall be required of such person until a police officer has taken him into custody. For the purposes of this subsection, "reasonable grounds" shall include knowledge that a person has concealed unpurchased merchandise of such establishment while on the premises or has altered or removed identifying labels on such merchandise while on the premises or is leaving such premises with such unpurchased or concealed or altered merchandise in his possession.
This statute was not passed to give protection to employees accused of theft by the employer. It applies to an "owner" or "authorized employee" who observes "any person" concealing something on the premises of a store. If such activity is observed the person may be questioned as to "name and address." Would an owner or an employer not know his own employee's name and address? Subsection (c) makes it clear that this statute was passed to protect storeowners and their employees from civil suit as long as they acted reasonably under the act. State v. Diaz, 39 Conn. Sup. 392 (1983) (Appellate Session Superior Court) examined the legislative history and origins of this statute in New York statutory law; the discussion makes clear that the statute was passed with the idea of protecting storeowners and employees protecting their interests from claims made by suspected shoplifters.
To extend the statute to employees would not be enforcing CT Page 481 any ascertainable public policy sought to be served by passage of this statute.
The motion to strike is granted as to all four counts.
Corradino, J.